## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 2010-CV-12276**

**CHARLES H. TURNER, and JEANNE
ACKERLY. ERNEST R. COSTON, DIANE
DUJON, OLGA SUMMONT, LOUIS ELISA,
ALMA FINNERAN, MICHAEL HEICHMAN,
FREDERICK C. JOHNSON, KARL JONES,
FRANCO MARZURKI, CAROLYN
JUPITER-MCINTOSH, ISAURA MENDES,
JUDITH RICHARDS, M. DANIEL
RICHARDSON III, SARAH-ANN SHAW**
                    **Plaintiffs,**
**v.**

**CITY OF BOSTON, and BOSTON CITY
COUNCIL and MICHAEL ROSS, FELIX G.
ARROYO, JOHN R. CONNOLLY, STEPHEN
J. MURPHY, AYANNA PRESSLEY,
SALVATORE LaMATTINA, BILL LINEHAN,
MAUREEN E. FEENEY, ROB CONSALVO,
MARK S. CIOMMO AND MATTHEW
O'MALLEY in their official capacities.**
                    **Defendants.**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND
DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY
INJUNCTION**

## I.      INTRODUCTION

In their Complaint, Plaintiffs bring claims against all Defendants pursuant to 42 U.S.C.

§1983 for violations of their First and Fourteenth Amendment rights and their rights under

Article I, Section 10 of the United States Constitution.  All claims arise out of the December 1,

2010 removal of Plaintiff, Charles Turner ("Turner") from elected office as a Boston City

Councilor  after his felony conviction on October 25, 2010.   The Plaintiffs have failed to make

any allegations that would permit any of their legal claims to succeed.  The City of Boston

1

("City"), the Boston City Council ("City Council") and Boston City Councilors Michael Ross, Felix G. Arroyo, John R. Connolly, Stephen J. Murphy, Ayanna Pressley, Salvatore LaMattina, Bill Linehan, Maureen E. Feeney, Rob Consalvo, Mark S. Ciommo, and Matthew O'Malley[1] (collectively "Defendants") move pursuant to Fed. R. Civ. P 12(b)(6) to dismiss all claims asserted within Counts I, II and III of Plaintiffs' Complaint.  As grounds therefore, the City states that (1) Count I is not viable because both the City and Corporation Counsel have no decision-making authority to remove Turner from office; and (2) Counts II and III are not viable because the City Council's vote to remove Turner was a proper exercise of its discretion under the Boston City Charter and was not in violation of the United States Constitution.  Accordingly, Plaintiffs' Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Additionally, Plaintiffs' request for temporary and permanent injunctive relief should be denied because Plaintiffs are unable to demonstrate a likelihood of success on the merits of any of their claims against the Defendants.  Nor have the Plaintiffs sufficiently alleged that they will suffer irreparable harm.  Moreover, because a special election to fill the Council seat for District 7 vacated by Councilor Turner is set for February 15, 2011, it is in the interest of the public to deny Plaintiffs' motion for a preliminary injunction.  Accordingly, the Defendants respectfully request that this Honorable Court deny Plaintiffs' request for temporary and permanent injunctive relief.

---

[1]    The Complaint names the individual Boston City Councilors in their official capacities. A claim against a government official in his official capacity is the equivalent of naming the governmental entity itself.  Brandon v Holt, 469 U.S. 464, 471-472 (1985).  Thus, any claims against the City Councilors are duplicative of the claims against the Boston City Council.

## II.    FACTUAL BACKGROUND[2]

On or about November 22, 2008, Turner was arraigned in federal court on charges of

bribery and lying to federal officials.[3]  <u>See</u> <u>Complaint</u> at paragraph sixteen ("Complaint at ¶_").

On or about December 10, 2008, Turner was indicted in federal court for felonious conduct.

Complaint at ¶ 18.  On or about January 25, 2009, the City Council enacted Rule 40A of the

Rules of the Council, which reads as follows:

> Pursuant to the city charter and in accordance with the open
> meeting law, the council president may refer a matter to the
> council upon his/her determination that any member has engaged
> in conduct unbecoming a member of the Boston City Council or
> may be unqualified to sit on the body. A member may be
> unqualified by violating federal or state law, or any conditions
> imposed by the city's charter, which includes violating any
> provisions of the three oaths of office.
>
> The council president shall automatically refer a matter to the
> council upon a felony conviction of any member by any state or
> federal court.
>
> Any action by the council taken in response to any referral shall
> require a two-thirds (2/3) majority roll call vote and will be in
> accordance with local, state and federal law.

Complaint at ¶ 19.

On or about October 25, 2010, Turner was convicted of felony counts in federal district

court.  Complaint at ¶ 20.  Turner was convicted by a jury of one count of attempted extortion

and three counts of making false statements to federal authorities, all of which are felonies.

During the thirteen day trial, at which the Councilor testified in his own defense, the Jury heard

---

[2]     For the limited purposes of this motion to dismiss, the Defendants assumes the following
facts, as set forth in the Plaintiff's complaint and supporting exhibits, to be true.

[3]     The Complaint states that the arraignment occurred on or about November 22, 2010, but
this must be in error.

evidence that Councilor Turner accepted $1000 from an FBI informant in order to assist the informant in obtaining a liquor license for a proposed establishment in the Councilor's District and then lied to the federal authorities who were investigating the allegations.[4]

On or about December 1, 2010, City Council President Michael Ross submitted a proposed order calling for Turner to vacate the office of City Council.  Complaint at ¶ 22.  Also on December 1, 2010 the Council voted to remove Turner from the elected office of Boston City Councilor.  Complaint at ¶ 23.  On or about December 15, 2010,[5] Council President Ross set the date for a special preliminary municipal election to fill the vacant seat for District 7.  Complaint at ¶ 25.  Sentencing for Turner is presently scheduled for January 25, 2011.

## III.   ARGUMENT

### A.   Plaintiffs' Complaint Must Be Dismissed As It Fails To Allege Any Plausible Entitlement To Relief Under Any Legal Theory.

#### 1.  Motion to Dismiss Standard

As an initial matter, the virtual absence of facts supporting the Plaintiffs' allegations in the Complaint presents an insurmountable bar to all Plaintiffs' legal claims.  The Supreme Court has made clear that to survive a motion to dismiss, a plaintiff's complaint must contain factual allegations—beyond mere labels, conclusions and formulaic recitations of the elements— sufficient to allege a "plausible entitlement to relief" that is "above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  Plaintiffs' statement of facts must

---

[4]     The Defendants respectfully request this Court to take judicial notice of the pertinent facts from the pending criminal proceeding in this Court against Charles Turner, United States of America v. Wilkerson, et al., C.R. No. 08-10345.  These facts include, but are not limited to, the details of the underlying allegations of the crimes for which Turner was convicted and the date of his upcoming sentencing, January 25, 2011.  The Court may take judicial notice of criminal proceedings if they have relevance to the case at hand.  See Kowalski v. Gagne, 914 F.2d 299, 605-06 (1st Cir. 1990).

[5]     The Complaint refers to a December 15th and December 12th vote.  There was no City Council vote on December 12th and any such reference must have been a typographical error.

"possess enough heft to show that [he or she] is entitled to relief." <u>Twombly</u>, 127 S. Ct. at 1966. Although the Court is obliged to accept Plaintiffs' well-pleaded facts as true and grant every reasonable inference in Plaintiffs' favor, that tenet does not apply to legal conclusions. <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999); <u>See</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009).

The Plaintiffs fail to plead any facts in support of their allegation that their First and Fourteenth Amendment rights and their Article I, Section 10 rights were violated.  Moreover, they failed to plead the requisite elements of any of their claims leaving to conjecture the nature of their cause of action, requiring dismissal on that basis alone.  In the event that Plaintiffs' Complaint is deemed to have sufficiently pled a cause of action under the First and Fourteenth Amendments and Article I, Section 10 of the Constitution, the Complaint, as discussed <u>infra</u>, must still be dismissed as a matter of law.

### B. Plaintiffs Have Not Sufficiently Pled That They Were Deprived Of A Constitutional Right In Order To Bring A 42 U.S.C. § 1983 Claim Against The City Of Boston.

To establish municipal liability, a plaintiff must first demonstrate the deprivation of a constitutional right.  <u>City of Los Angeles, et al. v. Heller</u>, 475 U.S. 796, 799 (1986); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  Although the Plaintiffs state that they were deprived of their First and Fourteenth Amendment[6] rights and their rights under Article I, Section 10 they have not alleged any facts to support that contention.  Without the existence of a constitutional violation, the question of municipal liability "is quite beside the point." <u>Heller</u>,

---

[6]     It is unclear whether the Plaintiffs bring separate Fourteenth Amendment claims under U.S.C. § 1983 apart from their First Amendment claims or that the reference to the Fourteenth Amendment in the Complaint merely acknowledges the incorporation of the First Amendment to the states through the Fourteenth Amendment.  Despite any factual allegations to support claims under the Fourteenth Amendment, the Defendants address a separate claim is it if were appropriately pled.

475 U.S. at 799.   As will be discussed, <u>infra</u>, in <u>Sections</u> (C) and (D), the Plaintiffs have not alleged, nor would they be able to prove, the deprivation of a constitutional right.

### C. Count I Must be Dismissed Because the Corporation Counsel Is Not A Policy Maker For Purposes Of Municipal Liability Under 42 U.S.C. § 1983.

Plaintiffs have failed to properly allege or assert a 42 U.S.C. § 1983 claim against the City of Boston.   In <u>Monell</u>, the United States Supreme Court held that municipalities could be liable, for purposes of 42 U.S.C. § 1983, based upon the actions of their officials when those officials' "edicts or acts may fairly be said to represent official policy."   <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978). However, "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988) (<u>quoting</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986)).   Here, the City's Corporation Counsel does not have final decision-making authority for matters within the City Council's jurisdiction.   Only the City Council can exercise decision-making authority through a vote of its members.   St. 1951, c. 376 §§ 1, 17. The Corporation Counsel had no decision-making authority vis-à-vis the removal of Turner from office.   Rather the City Councilors were the sole decision makers in judging Councilor Turner's fitness for office.   The City's Corporation Counsel provides legal advice and does not purport to hold any final policymaking authority.   <u>See</u> City of Boston Code, Ordinance 5-8.1.   As such, there is no viable claim against the City of Boston based upon the actions of its Corporation Counsel and Count I must be dismissed.

**D. Count II Must be Dismissed Because the Council's Decision to Remove Turner Pursuant To The City Charter And City Council Rule 40A Did Not Violate Turner's  Constitution Rights.**

**1. First and Fourteenth Amendments Freedom of Association**

Turner has failed to properly allege or assert a 42 U.S.C. § 1983 claim against the City Council.  In order to properly assert a § 1983 claim against the City Council, Turner must show that the City Charter and City Council Rule 40A, as applied to him, violated his First and Fourteenth Amendment rights.  The freedom of association rights related to voting under the First and Fourteenth Amendments are fundamental rights.   Anderson v. Celebrezze, 460 U.S. 780, 787-88 (1983).   However, not all restrictions imposed on such rights impose constitutionally-suspect burdens.  Id. at 788.   When analyzing a local rule's validity under the Constitution, the Court "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Plaintiff seeks to vindicate." Id. at 789.  It then must identify and evaluate the precise interests put forward by the City as justifications for the burden imposed by its rule.  In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.  Id.

The burden on Turner's First Amendment right to hold office is not so severe, which means that strict scrutiny is inapplicable.  Torres-Torres v. Puerto Rico, 353 F.3d 79, 83 (1st Cir. 2003).  Candidacy and the right to hold office do not rise to the level of a fundamental right.  Id. at 83 (citing Clements v. Fashing, 457 U.S. 957, 963 (1982)).   Because strict scrutiny is inapplicable, the City Council must put forth a legitimate interest that is served by the City Charter and City Council Rule 40A and demonstrate that the actions the City Council took in removing Turner from office bear a rational relationship to the City Council's legitimate interest.

7

The City Council has a legitimate interest in eradicating public corruption.  Id. at 83.
City Council Rule 40A was promulgated under the authority of the City Charter, St. 1951 c. 376,
§ 17, to support the Council's interest in eliminating public corruption.  Rule 40A serves as a
procedural mechanism by which the City Council can review the circumstances when a
Councilor engages in misconduct, such as public corruption, and specifically when a Councilor
is convicted of a felony.  Rule 40A was unanimously passed by the City Council on January 25,
2009.

While Rule 40A allows the Council President to refer a matter to the full City Council
when there is, in his judgment, evidence of a violation of the law or the oaths of office, it
mandates that such referral be made upon a felony conviction.   In this instance, Turner was
convicted by a jury for felonies involving public corruption in his office as a City Councilor,
including taking bribes to facilitate actions he would take as a City Councilor.   Accordingly,
Council President Ross referred the matter to the City Council and recommended that such
convictions deemed Turner unqualified to serve as a member of the City Council.

In this instance, Turner's felony conviction necessitated the action that the City Council
took in furtherance of its interest in eradicating public corruption.  The City Council simply felt
that it could not allow an individual convicted of felony corruption crimes in the office of City
Councilor to continue serving on the City Council.  There was no less restrictive burden on
Turner's rights that the Council could have imposed.  The vote to remove Turner, because of his
felony convictions, is a reasonable non-discriminatory restriction on his right to hold office.  Id.
at 83.  Accordingly Count II must be dismissed.

### 2.      Fourteenth Amendment Equal Protection

To the extent Turner is alleging a violation of the Fourteenth Amendment equal protection clause, he similarly has failed to assert sufficient facts to support such a claim. In making an equal protection challenge, it is the claimant's burden to demonstrate in the first instance discrimination against him of some substance. American Party of Texas v. White, 415 U.S. 767, 781 (1974). Classification is the essence of all legislation and only those classifications which are invidious, arbitrary or irrational offend the Equal Protection Clause of the Constitution. Williamson v. Lee Optical Co., 348 U.S. 483, 489 (1955).

"Legislatures are ordinarily assumed to have acted constitutionally"; Clements v. Fashing, 457 U.S. 957, 963 (1982). "Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." Id.

"Decisions in the area of constitutional adjudication assessing challenges to state election laws that restrict access to the ballot involve consideration of the facts and circumstances behind the law, the interests the State seeks to protect by placing restrictions on candidacy and the nature of the interests of those who may be burdened by the restrictions." Stocer v. Brown, 415 U.S. 724, 730 (1974). The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the "availability of political opportunity." Lubin v. Parish, 415 U.S. 709, 716 (1974).

Here, the restrictions on holding office in the Boston City Council, pursuant to Rule 40A, do not contain any classification that imposes special burdens on minority political parties of independent candidates, political affiliation or political viewpoint. Accordingly, to the extent that the Complaint is deemed to allege a violation of the equal protection clause of the Fourteenth Amendment, dismissal is warranted.

3.      **Fourteenth Amendment Procedural Due Process**

For purposes of this motion, Defendants presume—because the Complaint itself fails to say—that Counts I, II, and III assert federal due process violations.  With respect to that claim, the Complaint merely states the December 1, 2010 removal of Turner from office "was in violation of [Plaintiffs'] rights protected by the First and Fourteen [*sic*] Amendments to the United States Constitution . . .."  Complaint at ¶¶ 27, 29, 31.  To establish a federal procedural due process claim, a plaintiff must first allege he has a property interest and that he was deprived of that property interest without due process.  Jeneski v. City of Worcester, 476 F.2d 14, 17 (1st Cir. 2007) (citations omitted).

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law.' " Cleveland Board of Education v. Loudermill, 470 U.S. 532, 540 (1985) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).  However, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 757 (2005) (quoting Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9, (1978).  A "legitimate claim of entitlement" to employment arises from existing rules or "mutually explicit understandings" generated by an independent source, such as state law. Board of Regents, 408 U.S. at 577; Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

In the context of this case, the Supreme Court has explicitly held that public officials do not have a property interest in their elected positions.  In Taylor v. Beckham, the governor of Kentucky claimed to have been deprived of property—namely, his political position–without due

process arising from an alleged fraudulent recount election that ousted him from office.  178 U.S.

548, 576-77 (1900).  In its rejection of the governor's argument, the Supreme Court stated:

> The decisions are numerous to the effect that public offices are
> mere agencies or trusts, and not property as such . . . [G]enerally
> speaking, the nature of the relation of a public officer to the public
> is inconsistent with either a property or contract right.

Id. at 577.  Thus, the Court concluded that the governor had been "denied no right secured by the

14th Amendment."  Id. at 578.  The Supreme Court addressed the same question forty years later

in Snowden v. Hughes, and reaffirmed its holding in Taylor that elected offices cannot constitute

property within the meaning of the Fourteenth Amendment.  321 U.S. 1, 7, (1944).  Since the

Taylor and Snowden decisions, federal courts have consistently upheld the denial of a property

interest in an elected office.  See, e.g., Velez v. Levy, 401 F.3d 75, 85-87 (2d Cir. 2005) (citing

Taylor and Snowden in denying Fourteenth Amendment property interest of elected school

official); Burks v. Perk, 470 F.2d 163, 165 (6th Cir.1972) (per curiam) ("Public office is not

property within the meaning of the Fourteenth Amendment."); Rabkin v. Dean, 856 F.Supp. 543,

549 (N.D.Cal.1994) (elected officials do not hold a property interest in their positions); See also

Guzman Flores v. College of Optometrists, 106 F.Supp.2d 212, 214 (D.Puerto Rico 2000)

(relying on Taylor and Snowden in dismissing property interest claim in candidate for public

office).

Here, Turner was an elected City Councilor and thus lacks a constitutionally cognizable

property interest in his elected office.  Despite that very fact, he was still provided all the

safeguards of due process prior to being removed from office.  Procedural due process

guarantees an individual the right to a hearing, with notice and the opportunity to be heard before

he is divested of his protected interest.  See Loudermill, 470 U.S. at 542 (1985); Cotnoir v.

University of Maine Systems, 35 F.3d 6, 10 (1st Cir. 1994).  Here, Turner does not allege that he

was not given notice or an opportunity to be heard prior to the December 1, 2010 vote to remove him from elected office. Further, as discussed supra, he did not have a constitutionally protected interest in his elected position.[7] Thus, he has not set forth any facts in support of his theory that he was denied due process before his removal.

### 4.    Substantive Due Process

Any contention that the Defendants violated Turner's substantive due process rights is equally unavailing. To allege that the City Council violated Turner's substantive due process rights, he must show "*both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty or property." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir.2006) (emphasis in original). A substantive due process claim is "fundamentally, not a claim of procedural deficiency, but rather, a claim that the state's conduct is inherently impermissible." Schiller v. Strangis, 540 F. Supp. 605, 614 (D. Mass. 1982). "Due process of law is a summarized constitutional guarantee of respect for those personal immunities which . . . are so rooted in the traditions of conscience of our people as to be ranked as

---

[7]    Turner was afforded even further due process pursuant to Massachusetts General Laws, namely, Chapter 231A which allows in pertinent part for,

> The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not; and such proceeding shall not be open to objection on the ground that a merely declaratory judgment or decree is sought thereby and such declaration, when made, shall have the force and effect of a final judgment or decree and be reviewable as such. . .

fundamental, or are implicit in the concept of ordered liberty." Rochin v. California, 342 U.S. 165, 169 (1952).

Though not precisely defined, conscience-shocking conduct "must at the very least be 'extreme and egregious' ... [and] 'mere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior." Id. (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir.2005)). Turner's removal from office based on City Council Rule 40A, an objectively reasonable Rule allowing for the removal of a City Council member for a felony conviction by any state or federal court, was not "so brutal, demeaning, and harmful that it is shocking to the conscience." Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008). Consequently, should the Complaint be interpreted to allege a substantive due process claim, it must be dismissed.

### 5.     Ex Post Facto

Turner has failed to properly allege or assert a 42 U.S.C. § 1983 claim against the City Council for a violation of the Ex Post Facto clause of the Constitution, Article I, Section 10. Article I §10 of the Constitution imposes a restriction on criminal laws, and prohibits the enactment of laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). The City Council's removal of Turner pursuant to the City Charter and City Council Rule 40A was not a subsequent *criminal* punishment of Turner for his crimes; rather it was an administrative adjudicatory decision under the City Charter that Turner was no longer qualified to sit as a member of the City Council. The Council's decision flowed from Turner's criminal conviction but it was not *criminal* punishment for the conviction. As such, Turner has failed to state a claim for a violation of Article I, §10 of the Constitution and Count II must be dismissed.

**E.   Count III Must Be Dismissed Because The City Council's Decision to Remove Turner Pursuant To The City Charter And City Council Rule 40A Did Not Violate the Constitution.**

**1.  First and Fourteenth Amendments Freedom of Association**

Plaintiffs Jeanne Ackerly, Ernest R. Coston, Diane Dujon, Olga Summont, Loius Elisa, Alma Finneran, Michael Heichman, Frederick C. Johnson, Karl Jones, Franco Marzurki, Carolyn Jupiter-Mcintosh, Isaura Mendas, Judith Richards, M. Daniel Richardson III, and Sarah-Ann Shaw (collectively the "Plaintiff-voters") have failed to properly allege or assert a constitutional violation for which they can seek redress under 42 U.S.C. § 1983.   For the Plaintiff-voters to sufficiently plead a constitutional right, they must show that the City Charter and City Council Rule 40A, as applied to Turner, violated their First and Fourteenth Amendment rights.

The freedom of association rights related to voting under the First and Fourteenth Amendments are fundamental rights.   Anderson v. Celebrezze, 460 U.S. 780, 787-88, 103 S.Ct. 1564 (1983).  However, while certain voters may prefer a certain candidate, that they do not have the candidate of their choice is not a violation of a fundamental right.   There is no fundamental right to vote for a particular individual; therefore Turner's removal does not severely burden the Plaintiff-voters' rights of association.   Timmons v. Twin Cities Area New Party, 520 U.S. 351, 359 (1997).

Mandating a council vote upon the conviction of a member City Councilor for a felony, to determine whether the councilor has engaged in conduct unbecoming and is therefore no longer qualified to sit as a city councilor, neither discriminates on the basis of political affiliation nor on any factor not related to the councilor's qualifications to hold political office.   See Clements v. Fashing,  457 U.S. 957, 967 (1982).  It in no way burdens access to the political process.  It only burdens the councilor who has been found guilty of using his elected office to

commit a felony.  Thus, Rule 40A rests on a rational predicate.  It furthers the State's interest in punishing public corruption and indeed seeks to deter corruption, which serves a legitimate and strong government interest in seeking to prevent public corruption.  It is a purely objective standard as it applies to all City Councilors.  It does not even mandate automatic removal.  It merely mandates a vote on the issue of qualification.

As discussed <u>supra</u> in Section (C)(1), the City Council has a legitimate interest in eradicating public corruption.  <u>Torres-Torres</u>, 353 F.3d at 83.  Candidacy does not rise to the level of a fundamental right; nor are the Plaintiff-voters' First Amendment rights substantially impacted.  They may be deprived of their candidate of choice; however, they retain their right to vote in the immediate election in February and March. The impact on voters is insubstantial under a First Amendment analysis.  The Plaintiff-voters are not being denied their right to vote for a candidate of a particular political party or with a particular viewpoint.  Such impact on voters is substantial only when a class of candidates is excluded.  See <u>Torres-Torres v. Comision Estatal de Elecciones de Purert Rico, et al</u> , 700 F.Supp. 613, 622-623 (D.P.R. 1985) aff'd by <u>Torres -Torres v. Commonwealth of Puerto Rico</u>, 353 F. 3rd 79 (1st Cir. 2003).  The plaintiff does not represent a class of candidates.  Rule 40A does not operate to exclude any identifiable class of candidates other than convicted felons.  There is thus no substantial impact on any identifiable class of voters as a result of the City Council's vote to remove plaintiff from office.

It is undisputed that the Commonwealth has a legitimate and powerful interest in eradicating public corruption.   "The importance of governmental interest in preventing corruption has never been doubted."  <u>First National Bank of Boston v. Bellotti</u>, 435 U.S. 765, 788 n.26 (1978).  Indeed one could argue with "irony, the substantial impact on the rights of voters that results when the candidate the voters have elected to serve them abuses that

privilege." Torres Torres v.Comision Estatal de Elecciones de Puerto Rico et al, 700 F.Supp. 613, 624 (D.P.R. 1988) aff'd Torres Torres v. Commonwealth of Puerto Rico, 353 F. 3rd 79 (1st Cir. 2003).

City Council Rule 40A was passed in furtherance of this vital governmental interest and Turner's removal from the Council was necessary to support it. As such, the Plaintiff-voters have suffered no constitutional violations as a result of Turner's removal from the City Council. That the seat for District 7 is presently vacant is insufficient to support a claim for a Constitutional violation. Several District Council seats have been vacant in recent history.[8] The City Charter contemplates such vacancies and in fact sets guidelines to declare such a vacancy and call for a special election if need be. St. 1948 c. 452, §15.[9] Accordingly, the Plaintiff-voters have failed to state under § 1983 the existence of a constitutional deprviation, necessitating the dismissal of Count III.

### 2. Ex Post Facto

The Plaintiff-voters have failed properly allege or assert a 42 U.S.C. § 1983 claim against the City Council for a violation of the Ex Post Facto clause of the Constitution, Article I, Section 10. As discussed above in Section (C)(3), Article I §10 of the Constitution imposes a restriction on criminal laws, and prohibits the enactment of laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). The Plaintiff-voters have no standing under Article 1, §10. Even assuming that the

---

[8] The District 6 seat became vacant in the summer of 2009 and a special election was called and District 2 became vacant in 2007, necessitating a special election and the District 1 seat became vacant in 2006 also requiring a special election.

[9] If the seat becomes vacant more than 180 days before a regular municipal election, a special election will be called, otherwise the seat remains vacant until the next regular municipal election.

Council's decision to remove Turner violated the Ex Post Facto provision of the Constitution; the Plaintiff-voters have no standing, as they are not criminal defendants who suffered enhanced punishment because of the Council's decision. Accordingly, Count III must be dismissed.

### 3.     Substantive and Procedural Due Process

Similarly, the Plaintiff-voters do not have a property interest in the elected office held by Turner as the Supreme Court has stated that the elected seat is not property. Taylor v. Beckham, 178 U.S. 548, 576-77 (1900); Snowden v. Hughes, 321 U.S. 1, 7, (1944). "[P]ublic offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. Nor does the fact that a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent change its character or make it property. True, the restrictions limit the power of the legislature to deal with the office, but even such restrictions may be removed by constitutional amendment. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." Taylor v. Beckham, 178 U.S. at 577. Because an elected office is not a property interest, the Plaintiff-voters do not have a viable claim under the Fourteenth Amendment.

Lastly, as discussed supra, the removal of Turner from office did not amount to conduct that was so egregious as to "shock the conscience" and deprive the Plaintiff-voters of a protected interest in life, liberty, or property. Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). Dismissal of Count III is appropriate.

**F.   Assuming Counts I, II and III Are Not Dismissed The Plaintiffs Are Not Entitled To Temporary Injunctive Relief As The Are Unlikely to Succeed on the Merits Will Not Suffer Irreparable Harm and the Public Interest Supports Denial of Injunctive Relief.**

The propriety of preliminary injunctive relief depends on an amalgam of four factors: (I) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public interest.  Waldron v. George Weston Bakeries, Inc., 570 F.3d 5, 9 (1st Cir. 2009) (quoting Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009)).  Likelihood of success on the merits is the critical factor in the analysis.  Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).  To the extent the Plaintiffs request a preliminary and/or temporary injunction, such relief should be denied as they are unlikely to succeed on the merits of their Constitutional allegations, they will suffer no irreparable harm, and, with a special election scheduled for February 15, 2011, it is in the public interest to deny injunctive relief.

**1.  No likelihood of success on the merits.**

For all the reasons stated as grounds for dismissal of Counts I, II, and III, the Plaintiffs have no likelihood of success on the merits of their allegations of Constitutional violation and, as such, any request for preliminary or temporary injunctive relief must be denied.  As discussed supra, Plaintiffs have not sufficiently plead claims for relief under the First and Fourteenth Amendments, and Article I, Section 10, thus there is no likelihood of success on the merits.

**2. No irreparable harm.**

Plaintiffs cannot show that they will suffer any irreparable harm.  Here, Turner was removed from office on December 1, 2010.  The Plaintiffs did not file this lawsuit until December 30, 2010, nearly one month after he was removed.  Thus, any irreparable harm for the

loss of his seat for the month of December was due to his own inaction.  Moreover, pursuant to

Massachusetts General Laws, Chapter 279 § 30,[10] Turner is statutorily prohibited from holding

office if he is sentenced to prison on January 25, 2011.  Thus any alleged harm is superseded by

the application of M.G.L. c. 279 § 30.  Further, Plaintiffs did not allege any facts to show

irreparable harm, thus, they cannot satisfy this required element.

### 3.  The public interest supports denial of injunctive relief.

Turner was convicted by a jury of one count of attempted extortion and three counts of

making false statements to federal authorities, all of which are felonies.  During the thirteen day

trial, at which the Councilor testified in his own defense, the Jury heard evidence that Councilor

Turner accepted $1000 from an FBI informant in order to assist the informant with obtaining a

liquor license for a proposed establishment in the Councilor's District and then lied to federal

authorities who were investigating the allegations.  Due to these convictions, the City Council

voted to remove Turner and has begun the process for a preliminary election to be held on

February 15, 2011 and final election to be held on March 15, 2011.  Several potential candidates

have pulled the necessary papers indicating their interest in running for the District 7 seat.

In the event that Turner is sentenced to prison on January 25, 2011, he must vacate his

Council position by operation of law.  M.G.L. c. 279, § 30.  The public interest not only supports

a removal from office of a City Councilor who was found guilty of extortion and lying in relation

to his role as a Councilor, but it also supports moving forward with the properly called special

election so that a qualified candidate can be elected by all the voters of District 7 who choose to

participate in the special election.

---

[10]   M.G.L. c. 279 § 30 states in pertinent part, "If a convict sentenced by a court . . . of the United States to imprisonment . . . to a federal penitentiary for a felony holds an office under the constitution or laws of the commonwealth at the time of sentence, it shall be vacated from the time of sentence."

IV.     CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Honorable Court dismiss Plaintiffs' Complaint in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). Should the Court conclude that dismissal is not warranted at this juncture, the Defendants request that Plaintiffs' request for preliminary or temporary injunctive relief be denied.

| | |
|---|---|
| **CERTIFICATE OF SERVICE** | Respectfully submitted,<br>DEFENDANTS, |
| I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants. | William F. Sinnott,<br>Corporation Counsel<br><br>By their attorneys, |
| 1/21/2011  /s/ Lisa Skehill Maki<br>Date        Lisa Skehill Maki | /s/ Lisa Skehill Maki<br>Lisa Skehill Maki, BBO # 675344<br>Assistant Corporation Counsel<br>Susan M. Weise, BBO # 545455<br>First Assistant Corporation Counsel<br>Maribeth A. Cusick, BBO # 658839<br>Chief of Government Services<br>City of Boston Law Department<br>One City Hall Plaza, Room 615<br>Boston, MA 02201<br>(617) 635-4040 (Weise)<br>(617) 635-4477 (Cusick)<br>(617) 635-4022 (Maki) |

**7.1 Certification**

Undersigned counsel certifies that on January, 2011, pursuant to LR, D. Mass. 7.1(a)(2), counsel for the Defendants, Lisa Skehill Maki, spoke with counsel for the Plaintiffs and was unable to resolve or narrow the issues.

Date:   January 21, 2011                              /s/ Lisa Skehill Maki
                                                       Lisa Skehill Maki