## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 2010-CV-12276**

**CHARLES H. TURNER, and JEANNE ACKERLY, ERNEST R. COSTON, DIANE DUJON, OLGA SUMMONT, LOUIS ELISA, ALMA FINNERAN, MICHAEL HEICHMAN, FREDERICK C. JOHNSON, KARL JONES, FRANCO MARZURKI, CAROLYN JUPITER-MCINTOSH, ISAURA MENDES, JUDITH RICHARDS, M. DANIEL RICHARDSON III, SARAH-ANN SHAW**
**Plaintiffs,**

**v.**

**CITY OF BOSTON, and BOSTON CITY COUNCIL and MICHAEL ROSS, FELIX G. ARROYO, JOHN R. CONNOLLY, STEPHEN J. MURPHY, AYANNA PRESSLEY, SALVATORE LaMATTINA, BILL LINEHAN, MAUREEN E. FEENEY, ROB CONSALVO, MARK S. CIOMMO AND MATTHEW O'MALLEY in their official capacities.**
**Defendants.**

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO THE PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

---

### I.    INTRODUCTION

Now come the Defendants, the City of Boston ("City"), the Boston City Council ("City Council") and Boston City Councilors Michael Ross, Felix G. Arroyo, John R. Connolly, Stephen J. Murphy, Ayanna Pressley, Salvatore LaMattina, Bill Linehan, Maureen E. Feeney,

Rob Consalvo, Mark S. Ciommo, and Matthew O'Malley[1] (collectively "Defendants") and hereby oppose Plaintiffs' motion for preliminary injunction, declaratory relief, or in the alternative summary judgment ("Plaintiffs' instant motion") and hereby move for summary judgment pursuant to Fed. R. Civ. P. 12(b)(1) and 56.  In support of their Cross-Motion for Summary Judgment, the Defendants submit the following memorandum of law.  The Defendants further incorporate by reference the facts set forth in the <u>Defendants' Local Rule 56.1 Statement of Facts</u>.[2]

Plaintiffs bring claims against the Defendants pursuant to 42 U.S.C. § 1983 for violations of their First and Fourteenth Amendment rights and their rights under Article I, Section 10 of the United States Constitution.  All Plaintiffs' claims arise out of the removal by the Boston City Council of Charles Turner ("Turner") from elected office on December 1, 2010 following his felony convictions for bribery and lying to federal investigators.  In their instant motion, Plaintiffs seek to reinstate Turner to the City Council and prevent the upcoming special election to fill the seat that was vacated after Turner's removal.  Despite its twenty-nine pages, Plaintiffs' instant motion fails to articulate a constitutional harm for which a preliminary injunction would cure.  The absence of a constitutional injury is fatal to Plaintiffs' federal cause of action and requires judgment in favor of the Defendants.

---

[1]     The Complaint names the individual Boston City Councilors in their official capacities. A claim against a government official in his official capacity is the equivalent of naming the governmental entity itself.  <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>Brandon v Holt</u>, 469 U.S. 464, 471-472 (1985).  Nevertheless, as legislative officials, the City Councilors would be entitled to legislative immunity had they been sued in their individual capacities.  <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 49 (1998).

[2]     Plaintiffs failed to submit a Rule 56.1 Statement of Material Facts in their Motion for Injunctive Relief, Declaratory Relief, or in the Alternative Summary Judgment that was filed on January 10, 2011.  Failure to include a Rule 56.1 Statement of Material Facts constitutes grounds for denial of their motion.  <u>See</u>  L.R., D. Mass. 56.1.

Specifically, the Plaintiffs' alleged constitutional injuries are not cognizable as (1) Turner does not have a fundamental right to hold office and his removal from office is constitutional under Section 2 of the Fourteenth Amendment; (2) Turner did not have a constitutionally protected property interest in his former elected office; (3) Council Rule 40A is the equivalent of a disenfranchisement law and is thus civil in nature and does not violate the Ex Post Facto Clause.  Similarly, the Plaintiff-voters (1) have not suffered the deprivation of a First or Fourteenth Amendment right in the removal of Turner from office; (2) do not have a constitutionally protected property interest in having Turner as their City Council representative; and (3) the removal of Turner was not penal in nature and, therefore, his removal from office did not violate the Ex Post Facto Clause.  Accordingly, the Defendants, hereby oppose the Plaintiffs' instant motion and move for summary judgment on all counts.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On or about November 22, 2008, Turner was arraigned in federal court on charges of bribery and lying to federal officials.[3]   See Statement of Facts at ¶ 1.  ("SOF at ¶__").  On or about December 10, 2008, Turner was indicted in federal court for felonious conduct.  SOF at ¶ 2.  On or about January 25, 2009, the City Council enacted Rule 40A of the Rules of the Council, which reads as follows:[4]

> Pursuant to the city charter and in accordance with the open
> meeting law, the council president may refer a matter to the

---

[3]    The Complaint states that the arraignment occurred on or about November 22, 2010, but this must be in error.

[4]    Noteworthy is that Turner himself voted in favor of Rule 40A on January 25, 2009 because he had "no doubt that [he] would be found innocent and therefore saw no problem in putting a rule into place that [he] did not believe would ever be used in [his] situation.  See SOF ¶ 11.  Now, Turner and the District 7 Plaintiffs are alleging that the very removal rule he voted in favor of is unconstitutional because after his conviction, it applies to him.

> council upon his/her determination that any member has engaged
> in conduct unbecoming a member of the Boston City Council or
> may be unqualified to sit on the body. A member may be
> unqualified by violating federal or state law, or any conditions
> imposed by the city's charter, which includes violating any
> provisions of the three oaths of office.
>
> The council president shall automatically refer a matter to the
> council upon a felony conviction of any member by any state or
> federal court.
>
> Any action by the council taken in response to any referral shall
> require a two-thirds (2/3) majority roll call vote and will be in
> accordance with local, state and federal law.

SOF at ¶ 3.

On or about October 25, 2010, Turner was convicted of felony counts in federal district court. SOF at ¶ 4. Turner was convicted by a jury of one count of attempted extortion and three counts of making false statements to federal authorities, all of which are felonies.[5] SOF at ¶ 5. During the thirteen day trial, at which the Councilor testified in his own defense, the Jury heard evidence that Councilor Turner accepted $1000 from an FBI informant in order to assist the informant in obtaining a liquor license for a proposed establishment in the Councilor's District and then lied to the federal authorities who were investigating the allegations. Id.

On or about November 1, 2010, City Council President Michael Ross sent a letter to Turner informing him that the City Council intended to address his convictions through the use of City Council Rule 40A on December 1, 2010. SOF at ¶ 6. On or about December 1, 2010, City Council President Michael Ross submitted a proposed order calling for Turner to vacate the office of City Council by December 3, 2010. SOF at ¶ 7. Also on December 1, 2010, the

---

[5] The following details regarding the specifics of the convictions and the trial are not contained in the Plaintiffs' complaint, but they are facts related to a criminal proceeding in the Federal District Court, of which this Court can take judicial notice. The facts are relevant to the Defendants' opposition to any requested injunctive relief.

Council voted to remove Turner from the elected office of Boston City Councilor. SOF at ¶ 8. On or about December 15, 2010,[6] Council President Ross set the date for a special preliminary municipal election to fill the vacant seat for District 7. SOF at ¶ 9. Sentencing for Turner is presently scheduled for January 25, 2011. SOF at ¶ 10. On December 30, 2010, the Plaintiffs filed their Complaint. The instant motion was filed on January 10, 2011.[7]

## III.   ARGUMENT

### A.   Standard of Review

#### 1. Preliminary Injunction

In considering whether a grant or denial of preliminary injunction will issue, the court must consider four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiff; and (4) the effect, if any, on the public interest." Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75 (1st Cir. 2009) (quoting Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008)). Of these four criteria, a showing of the likelihood of success on the merits has been held to be "the touchstone of the preliminary injunction inquiry." Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir.1998). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

---

[6]     The Complaint refers to a December 15th and December 12th vote. There was no City Council vote on December 12th and any such reference must have been a typographical error.

[7]     Although both the Complaint and the Plaintiffs' instant motion are similar, the Defendants address the allegations within Plaintiffs' Complaint in a separate motion to dismiss.

As set forth infra, the Plaintiffs have no chance of success on the merits as they cannot show the existence of a constitutional right for which they have been deprived. Moreover, the removal of Turner from office was not penal in nature, and therefore did not violate the Ex Post Facto Clause. Accordingly, Plaintiffs' claims for injunctive relief and summary judgment must be denied and summary judgment must be entered in favor of the Defendants.

**2. Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, "'genuine' means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." Buchanan v. Maine, 469 F.3d 158, 166 (1st Cir. 2006) (quoting Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 218-19 (1st Cir. 2004)) (internal quotation marks omitted). "Neither conclusory allegations [nor] improbable inferences are sufficient to defeat summary judgment." Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (citation and internal quotation marks omitted). Within this analytical framework, the Defendants are entitled to summary judgment on all counts in Plaintiffs' Complaint.

**B. Injunctive Relief Should Be Denied And Summary Judgment In Favor of the Defendants Should Enter Because Turner Has No Likelihood of Success on His Constitutional Claims.**

**1. Turner's 42 U.S.C. § 1983 Claims**

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must first demonstrate the deprivation of a constitutional right. City of Los Angeles, et al. v. Heller, 475 U.S. 796, 799 (1986); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002). Without the existence of a

constitutional violation, the question of municipal liability "is quite beside the point." Heller, 475 U.S. at 799. If the plaintiffs can show a constitutional harm, they must then "identify a municipal policy or a custom that caused the plaintiff's injury. . . .The disputed policy or custom must also be the cause and moving force behind the deprivation of constitutional rights." Silva v. Worden, 130 F.3d 26, 30-31 (1st Cir. 1997). "A plaintiff can establish the existence of an official policy by," inter alia, "showing that the alleged constitutional injury was caused . . . by a person with final policymaking authority." Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) (internal citations omitted). Whether an official has this requisite level of specific policymaking authority is a matter of state law. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). This determination requires a showing that "a deliberate choice to follow a course of action [was] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 484 (1986) (plurality opinion).

**2. The Corporation Counsel Is Not a Policymaker For The City of Boston or The City Council.**

The City's Corporation Counsel is an attorney and not a policymaker for the City of Boston or the City Council. To determine whether the official who made the decision at issue was a final policymaker, Courts must look to state law, including "valid local ordinances and regulations," for descriptions of the duties and obligations of putative policymakers in the relevant area at issue. City of St. Louis v. Praprotnik, 485 U.S. 112, 125 (1988) (plurality opinion). This does not mean that Courts look only to state law labels to determine whether an official is a final policymaker, "[b]ut [the court's] understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the

official's functions under relevant state law." <u>McMillian v. Monroe County</u>, 520 U.S. 781, 786 (1997).  This, too, is a question of law for the judge to decide.

In the instant case, the City's Corporation Counsel does not have final decision-making authority for matters within the City Council's jurisdiction.  Only the City Council can exercise decision-making authority through a vote of its members.  St. 1951, c. 376 §§ 1, 17.  The Corporation Counsel had no decision-making authority in the removal of Turner from office. Rather the City Councilors were the sole decision makers in judging Councilor Turner's fitness for office as evidenced by their vote.  The City's Corporation Counsel provides legal advice to the City Council, which its members may or may not choose to follow.  The Corporation Counsel does not purport to hold any final policymaking authority.  <u>See</u> City of Boston Code, Ordinance 5-8.1.  As such, the Plaintiffs have no likelihood of success on the merits of their claim against the City of Boston.  Summary Judgment in favor of the City of Boston is, therefore, warranted.

### 3. Turner Cannot Show That He Has Suffered A Constitutional Deprivation As The Fourteenth Amendment Explicitly Allows For The Removal From Office And Disenfranchisement Of A Convicted Felon.

While the City Council concedes that it had final policymaking authority in removing Turner from office, there is still no likelihood that Turner would succeed in his § 1983 claim because he did not suffer a constitutional deprivation.  Plaintiffs' protracted argument regarding the City Council's authority to remove Turner from office is nothing but an effort to divert the Court's attention from the absence of a constitutional wrong.  As an initial matter, unlike the right to vote, the right to be a candidate or hold office is not a fundamental right.  <u>Compare</u> <u>Wesberry v. Sanders</u>, 376 U.S. 1, 17 (1976) ("[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens,

we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.")
with Clements v. Fashing, 457 U.S. 957, 963 (1982) ("Far from recognizing candidacy as a
'fundamental right,' we have held that the existence of barriers to a candidate's access 'does not
of itself compel close scrutiny.'") (quoting Bullock v. Carter, 405 U.S. 134, 143 (1972)).

Because the removal of Turner from office did not offend a fundamental right, no greater
level of inquiry than rational basis need apply.  Therefore, the removal of Turner from office
must bear only a rational relationship to the City Council's interests.  It is beyond doubt that
voting Turner out of office was rationally related to achieving a legitimate governmental
purpose—the extrication of a member whose crimes of corruption violated the core principles of
civic duty.  Moreover, City Council Rule 40A is objectively reasonable as it was promulgated to
support the Council's interest in eliminating public corruption.  The implementation of a
procedural mechanism to remove a convicted felon from office serves the interests of both the
City Council and the public.

Not only is Turner without a fundamental right to hold office, he no longer bears the
fundamental right to vote, as Section 2 of the Fourteenth Amendment *expressly* excludes felons
from that fundamental right.[8]  U.S. CONST. amend. XIV, § 2; Richardson v. Ramirez, 418 U.S.
24, 53-54 (1974).  Accordingly, although states may allow felons the right to vote, a convicted

---

[8]      The Fourteenth Amendment, Section 2 provides, "Representatives shall be apportioned
among the several States according to their respective numbers, counting the whole number of
persons in each State, excluding Indians not taxed. But when the right to vote at any election for
the choice of electors for President and Vice President of the United States, Representatives in
Congress, the Executive and Judicial officers of a State, or the members of the Legislature
thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and
citizens of the United States, or in any way abridged, *except for participation in rebellion, or
other crime,* the basis of representation therein shall be reduced in the proportion which the
number of such male citizens shall bear to the whole number of male citizens twenty-one years
of age in such State." U.S. CONST. amend. XIV, § 2 (emphasis added).

felon does not have a fundamental right to vote under the United States Constitution.[9]  Further, it

has been deemed that an individual's right to hold office is derived from an individual's right to

vote.  Bullock, 405 U.S. at 143 ("the rights of voters and the rights of candidates do not lend

themselves to neat separation."); Bates v. Jones, 131 F.3d 843, 851-52 (9th  Cir. 1997) (stating

that it is axiomatic that the right to be a candidate is derivative of the right to vote).

So, it would be illogical for an individual to be a candidate for elected office while his

felon status constitutionally prohibits him from voting in that same election.  Moreover, because

the right to vote is fundamental, Wesberry v. Sanders, 376 U.S. 1, 17(1976), and the right to hold

public office is not, see Clements and Bullock supra, reason dictates that if the Constitution

allows for the disenfranchisement of a voter upon a felony conviction, it would not run afoul of

the Constitution to remove a convicted felon from office.  See Medina v. City of Osawatomie,

992 F.Supp.1269, 1273 (D. Kans. 1998).  See also Gelch v. State Bd. of Elections, 482 A.2d

1204, 1207-08 (R.I. 1984) (holding Section 2 of the Fourteenth Amendment allowed state to

exclude candidate from running for, or, holding public office after he was convicted of a felony).

A state's right to disenfranchise felons, however, is not limitless. Hunter v. Underwood,

471 U.S. 222, 223 (1985).  Disenfranchisement laws are not to be enacted or applied with

discriminatory intent.  Id.  Looking to Council Rule 40A, there is nothing in its language or in

the circumstances surrounding its enactment that would suggest that its purpose was to

discriminate.  The intent and purpose of Rule 40A are unambiguous: the City Council will not

tolerate public corruption.  Rule 40A serves to eradicate public corruption by ensuring that City

Councilors who are convicted of a felony while they are in office are removed.  The City

Council's interest in preventing and deterring public corruption is legitimate.  Remarkably,

---

[9]      Mass. Gen. Laws, Chapter 51 §1 disqualifies incarcerated felons from voting.

Turner himself voted in favor of Rule 40A two years ago *after* his own indictment on the same felony charges for which he was convicted.  See Turner Affidavit.  Turner cannot now retreat from his position in favor of enacting Rule 40A and attempt to cast it as discriminatory simply because it now applies to him.

### 4.  Fourteenth Amendment Procedural and Substantive Due Process

Though it may be superfluous to discuss any potential procedural or substantive due process rights of Turner based on the foregoing arguments, for the sake of completeness the Defendants briefly address any potential claims under these provisions.   With respect to procedural due process, Turner did not have a constitutionally protected property interest in his elected position. Taylor v. Beckham, 178 U.S. 548, 576-77 (1900) ("[G]enerally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or contract right."); Snowden v. Hughes, 321 U.S. 1, 7, (1944) (forty years later, reaffirming Taylor, that elected offices cannot constitute property within the meaning of the Fourteenth Amendment).

Since Taylor and Snowden, federal courts have consistently found that an elected official does not have a constitutionally protected property interest in elected office. See, e.g., Velez v. Levy, 401 F.3d 75, 85-87 (2d Cir. 2005) (citing Taylor and Snowden in denying Fourteenth Amendment property interest of elected school official); Burks v. Perk, 470 F.2d 163, 165 (6th Cir.1972) (per curiam) ("Public office is not property within the meaning of the Fourteenth Amendment."); Rabkin v. Dean, 856 F.Supp. 543, 549 (N.D.Cal.1994) (elected officials do not hold a property interest in their positions); See also Guzman Flores v. College of Optometrists, 106 F.Supp.2d 212, 214 (D.Puerto Rico 2000) (relying on Taylor and Snowden in dismissing property interest claim in candidate for public office).

Because Turner was an elected City Councilor he lacked a constitutionally cognizable property interest in that elected office.  Nevertheless, he was still provided with notice that the City Council would be voting on his qualifications to continue to serve as a member.  See SOF at ¶ 6.  Turner was also allowed an opportunity to be heard before the vote.  Id.  Thus, Turner was provided with all the safeguards of due process prior to being removed from office and any claim under the procedural due process clause of the Fourteenth Amendment fails.

Likewise, any contention that the Defendants violated Turner's substantive due process rights is equally unavailing.  To allege that the City Council violated Turner's substantive due process rights, he must show "*both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty or property." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (emphasis in original).  A substantive due process claim is "fundamentally, not a claim of procedural deficiency, but rather, a claim that the state's conduct is inherently impermissible."  Schiller v. Strangis, 540 F. Supp. 605, 614 (D. Mass. 1982).  "Due process of law is a summarized constitutional guarantee of respect for those personal immunities which . . . are so rooted in the traditions of conscience of our people as to be ranked as fundamental, or are implicit in the concept of ordered liberty."  Rochin v. California, 342 U.S. 165, 169 (1952).

Though not precisely defined, conscience-shocking conduct "must at the very least be 'extreme and egregious' . . . [and] 'mere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior." Id. (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir.2005)).  As discussed supra, Turner's removal from office is explicitly authorized in Section 2 of the Fourteenth Amendment.  Moreover, Rule 40A is an objectively reasonable Rule which allows for the removal of a City Council member for a felony

conviction by any state or federal court, and was not "so brutal, demeaning, and harmful that it is shocking to the conscience." Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008). Given that Turner himself voted in favor of Rule 40A, any argument that the Rule, as applied to *him*, is conscience-shocking would be gratuitous and self-serving.

### 5. The First Amendment

As an initial matter, it is impossible to deduce from Plaintiffs' instant motion exactly what First Amendment right of Turner's was violated when he was removed from elected office. Overwhelming case law unequivocally demonstrates that there is no fundamental right to be a candidate or hold office. Anderson v. Celebrezze, 460 U.S. 780, 788 (1983); Clements v. Fashing, 457 U.S. 957, 963 (1982); Bullock v. Carter, 405 U.S. 134, 142-43 (1972); Torres-Torres v. Puerto Rico, 353 F.3d 79, 83 (1st Cir. 2003). Even if the right to hold public office was recognized as being fundamental, as is the right to vote, Turner's status as a felon moved any argument that he was deprived of such a right, out of reach.

Presumably then, Turner contends that his First Amendment right to association has been burdened by his removal from office, yet the instant motion lacks the identification of a person or group from which Turner has been denied his right to associate. Moreover, any contention that Turner has been prevented from associating with his former constituents is at odds with the facts laid out in support of Plaintiffs' instant motion. See SOF ¶ 11. Turner makes it abundantly clear that he has continued to advocate on behalf of his former constituents and associate with them since his removal from office.

Lastly, in view of the constitutionally sound removal of Turner from office pursuant to Section 2 of the Fourteenth Amendment, it is without a doubt that the First Amendment does not bestow upon Turner any greater rights than those under the Fourteenth Amendment. The First

Amendment applies to the states through the Fourteenth Amendment.  <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 599 n.2 (1980) (Stewart, J., concurring);  <u>Consolidated Edison Co. v. Public Service Commission</u>, 447 U.S. 530, 534 (1980); <u>See</u> <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 265, 84 S.Ct. 710, 718, 11 L.Ed.2d 686, 697 (1964); <u>Joseph Burstyn, Inc. v. Wilson</u>, 343 U.S. 495, 500 n.8 (1952); <u>Gitlow v. New York</u>, 268 U.S. 652, 666 (1925). Incorporation of the First Amendment through the Fourteenth Amendment logically imposes upon it the restrictions within the Fourteenth Amendment, namely, Section 2.  The First Amendment therefore, does not provide Turner with more protection than that afforded by the Fourteenth Amendment.  <u>See</u> <u>Gelch v. State Bd. of Elections</u>, 482 A.2d 1204, 1207-08 (R.I. 1984).

### 6.   The Ex Post Facto Clause

Next, Turner contends that Rule 40A violates his rights under the Ex Post Facto clause of the Constitution, Article I, Section 10. The Ex Post Facto Clause states that, "No State shall . . . pass any . . . ex post facto Law." U.S. CONST. art. 1, § 10.  The Ex Post Facto Clause "bars application of a law 'that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed[.]'"  <u>Johnson v. United States</u>, 529 U.S. 694, 699 (2000) (<u>quoting</u> <u>Calder v. Bull</u>, 3 U.S. 386, 390 (1798)).

The Ex Post Facto Clause requires a two-step analysis of a challenged law.  The first step requires the Court to determine whether Council Rule 40A was intended by City Council to be punitive.  <u>See</u> <u>Smith v. Doe</u>, 538 U.S. 84, 92 (2003) (<u>citing</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 361 (1997)).  Where the court finds such punitive intent, the inquiry ends.  <u>Id</u>.  However, where the Rule evinces a legislative intent to establish a civil, nonpunitive, regulatory scheme, the court must ensure that the scheme is not "so punitive either in purpose or effect as to negate [the

state's] intention to deem it civil." <u>Id</u>. (internal quotation marks and citations omitted). "Because [a court] ordinarily defers to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." <u>Id</u>. (internal quotation marks and citations omitted).

The City Council's intent in enacting Rule 40A was to protect the integrity of the City Council as a political body, not to inflict criminal punishment on members whose actions fell within its ambit.  <u>See</u> <u>Gelch v State Board of Election</u>, 482 A.2d 1204, 1211(R.I. 1984) ("the object of the removal of a public officer for official misconduct is not to punish the officer, but to improve the public service and to free the public from an unfit officer" (<u>quoting</u> <u>Timothy v Howse</u>, 134 Tenn. 67, 78 (1915).  Rule 40A is a civil, regulatory, nonpunitive rule which serves to ensure the purpose and meaning within the oath of office taken by its members.  Rule 40A makes no reference to a penal purpose.  Moreover, the Supreme Court has interpreted disenfranchisement laws to be traditionally civil despite their penal effect.  <u>Trop v. Dulles</u>, 356 U.S. 86, 95-96 (1958); <u>Simmons v. Galvin</u>, 575 F.3d 24, 26 (1st Cir. 2009) (affirming district court's dismissal of Massachusetts disenfranchisement law as violating the Ex Post Facto Clause).  Because the removal of an individual from elected office upon a felony conviction is similar to the disenfranchisement of a convicted felon, Rule 40A's effective removal of Turner from office is not punitive in nature.  As Rule 40A is not a punitive rule and does not implicate the Ex Post Facto Clause of the Constitution, summary judgment in favor of the Defendants should be entered.

**C.     The Plaintiff-Voters Have No Likelihood Of Success On The Merits As They Have Similarly Not Suffered A Constitutional Deprivation.**

**1.  First and Fourteenth Amendments Freedom of Association**

The Plaintiff-voters, Jeanne Ackerly, Ernest R. Coston, Diane Dujon, Olga Summont, Loius Elisa,Alma Finneran, Michael Heichman, Frederick C. Johnson, Karl Jones, Franco Marzurki, Carolyn Jupiter-Mcintosh, Isaura Mendas, Judith Richards, M. Daniel Richardson III, and Sarah-Ann Shaw (collectively the "Plaintiff-Voters'") claims suffer the same fate as Turner's as their constitutional claims do not have a likelihood of success.  Ballot-access cases invoke an inquiry of both the First Amendment (freedom of association) and the Fourteenth Amendment (classification of candidate groups).  Torres-Torres v. Puerto Rico, 353 F. 3d 79, 82 (1st Cir. 2003).  The First Amendment provides voters the right to associate to express their views through their candidates and their votes. Williams v. Rhodes, 393 U.S. 23, 30-31 (1968). The Fourteenth Amendment evinces the voters' fundamental right to cast their vote effectively. Wesberry v. Sanders, 376 U.S. 1, 17 (1976).

However, not all restrictions imposed by a state on a candidate's eligibility impose constitutionally suspect burdens on voters' First Amendment rights to associate and choose among candidates. Anderson v. Celebrezze, 460 U.S. 780, 789 (1989).  States election laws have long been recognized as necessary to ensure fair, honest and orderly elections.  Id.  Generally, state regulations which have been found unconstitutional offend either the First Amendment rights of voters to cast their votes effectively, Dunn v. Blumstein, 405 U.S. 330, 349 (1972) (striking down voter durational residence requirement), or the voters' right to associate and advance their political views through candidates who are prevented from running.  Anderson v. Celebrezze, 460 U.S. at 780 (striking down filing deadline which unequally burdened new parties or independent candidates); Bullock v. Carter, 405 U.S. at 134 (filing fee which due to its

impact on voter resources impacts on the exercise of the franchise); Storer v. Brown, 415 U.S. at 724 (regulation of independent candidates); Illinois Elections Board v. Socialist Workers Party, 440 U.S. 173, 173 (1979) (25,000 signature requirement to run for office found to burden new parties).

In assessing the impact of the state law on the voters' rights, the Anderson balancing test applies.  460 U.S. at 789.  That test requires a weighing of the,

> character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary.  Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.

Torres-Torres, 353 F. 3d at 82 (citing Timmons v. Twin Cities Area New Party, 520 U.S. 351 (1997)).

In this case, the Plaintiff-voters claim that their right to associate and vote was burdened because Turner was removed from office.  Contrary to Plaintiff-voters' position, they are not guaranteed the right to vote for a specific individual under the First Amendment.[10]  Moreover, Courts generally apply heightened scrutiny only where a *class* of candidates is excluded and the voters' rights are substantially impacted.  See Torres-Torres, 700 F.Supp. at 622-623 (D.P.R. 1985), *aff'd by*, Torres -Torres v. Commonwealth of Puerto Rico, 353 F. 3rd 79 (1st Cir. 2003) (and cases cited).  Presently, the *only* elected official that Rule 40A excludes is Turner. Although arguably Rule 40A excludes a "class" of elected officials—those who have been

---

[10]     See Laurence H. Tribe, American Constitutional Law 13-10, at 1062 (2d ed. 1988) ("Election-related rights display the special feature that the equality with which they are available, rather than the fact of their availability or absence, ordinarily proves decisive.").

convicted of a felony—it applies without contemplation of viewpoint.  Indeed, many states prohibit felons from holding office.[11]  The restrictions on holding office on the Boston City Council, pursuant to Rule 40A, do not contain any classification that imposes special burdens on minority political parties of independent candidates, political affiliation, or political viewpoint. As the rule applies equally across the board, there is no effect on a candidate's political party or viewpoints, and as such there is no severe restriction on the Plaintiff-voters' right to vote that would require strict scrutiny.

Moreover, Rule 40A furthers the state's interest in protecting the integrity of the public office and deterring public corruption. "The importance of governmental interest in preventing corruption has never been doubted."  First National Bank of Boston v. Bellotti, 435 U.S. 765, 788 n.26 (1978).  Indeed, one could argue with "irony, the substantial impact on the rights of voters that results when the candidate the voters have elected to serve them abuses that privilege".  Torres Torres, 700 F.Supp. 613, 624 (D.P.R. 1988), aff'd by, Torres Torres v. Commonwealth of Puerto Rico, 353 F. 3rd 79 (1st Cir. 2003).  Mandating a City Council vote upon the conviction of a member for a felony to determine whether that member is no longer qualified to remain in office, neither discriminates on the basis of political affiliation nor on any other factor unrelated to the  qualifications to hold political office.  See Clements v. Fashing, 457 U.S. 957, 967 (1982).

In sum, Rule 40A is not invidious and in no way burdens access to the political process. In fact, it only burdens the councilor who has been found guilty of using his elected office to commit a felony.  Thus, Rule 40A rests on a nondiscriminatory and reasonable predicate and its

---

[11]    See e.g., Note, Steinacker, The Prisoner's Campaign:  Felony Disenfranchisement Laws and the Right to Hold Public Office, 2003 B.Y.U. L.R. 801, 804-07 (2003) (comprehensive list of state laws disenfranchising felons from candidacy and holding public office).

effect on the Plaintiff-voters is marginal.  Thus, the impact on the Plaintiff-voters' rights by the removal of Turner is insubstantial and the interests of the City Council legitimate.

Lastly, it is remarkable that in the same breath the Plaintiff-voters aver that Turner's removal from office under Rule 40A violated their constitutional rights, they champion the validity of Mass. Gen. Laws, Ch. 279 § 30, which automatically removes Turner from office if he is sentenced to prison on January 25th.[12]  These two assertions are irreconcilable with the Plaintiff-voters' claims of unconstitutional disenfranchisement and their claim that their voices are unequally represented by an at-large councilor.

Rule 40A allows an elected official to be removed from elected office upon a felony conviction while Chapter 279 § 30 mandates the removal of an elected official from office upon being sentenced for a felony conviction.  Both prohibit the Plaintiff-voters from having Turner as their candidate of choice.  And, both require the Plaintiff-voters' interests to be represented by an at-large City Councilor until the special election.  On one hand, the very existence of Chapter 279 § 30 demonstrates the constitutionality in the removal of a convicted felon from a voters' choice of candidates.  On the other hand, the Plaintiffs' outward acceptance of Chapter 279 § 30 reveals the true identify of this lawsuit:  the strictly state-law based disagreement the Plaintiffs have with the procedural mechanism used to enact Rule 40A and unseat Turner after his felony

---

[12]   M.G.L. c. 279 § 30 states in pertinent part, "If a convict sentenced by a court . . . of the United States to imprisonment . . . to a federal penitentiary for a felony holds an office under the constitution or laws of the commonwealth at the time of sentence, it shall be vacated from the time of sentence."

conviction.   Because the Plaintiff-voters suffered no constitutional harm, the Defendants are

entitled to summary judgment on Plaintiffs' First and Fourteenth Amendment claims.[13]

### D.     This Court Lacks Subject Matter Jurisdiction to Review the Enactment of Council Rule 40A Under The City of Boston Charter.

As demonstrated by the twenty-seven out of a total of twenty-nine pages of argument

devoted to the mechanics by which Rule 40A was enacted, Plaintiffs' divergence with the

Defendants' interpretation of the City Charter is the driving force of this cause of action.[14]  That

issue however, is purely one of state law as it does not give rise to a constitutional injury as

evidenced above.  Assuming *arguendo*, that Rule 40A was enacted outside the scope of the City

Council's authority under the City Charter, the Defendants' justification for removing Turner

from office is recognized as both important and legitimate under the federal constitution.

Accordingly, any alleged violation of state law is insufficient to sustain a claim under § 1983.

See Baker v. McCollan, 443 U.S. 137, 146-47 (1979).

Because Plaintiffs' federal claims are nonexistent, there is no remaining basis for federal

jurisdiction.  Any desire on the part of the Plaintiffs' to have this Court interpret the language of

---

[13]     Akin to Turner's claims under the Fourteenth Amendment for violations of substantive and procedural due process, the Plaintiff-voters do not have a property interest in an elected office.  Taylor v. Beckham, 178 U.S. 548, 576-77 (1900); Snowden v. Hughes, 321 U.S. 1, 7, (1944).  Likewise, the removal of Turner from office did not amount to conduct that was so egregious as to "shock the conscience" and deprive the Plaintiff-voters of a protected interest in life, liberty, or property.  Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir.2006).  Consequently, the Defendants are entitled to judgment as a matter of law.

[14]     As set forth in Defendants' Response to this Court's January 14, 2011 Order, the question over Rule 40A's validity has no bearing on whether Plaintiffs suffered a constitutional deprivation.

the City Charter must be denied.[15]   When a "court dismisses the foundational federal claims, it must reassess its jurisdiction," and "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation."   Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).   Without the existence of a constitutional harm, the scale tips decidedly in favor of dismissing Plaintiffs' arguments regarding with the validity of Rule 40A.   As evidenced by the arguments set forth above, Plaintiffs' constitutional claims were merely a vehicle used in an attempt to improperly transport pure issues of state law to a federal forum.[16] Summary Judgment in favor of the Defendants is appropriate.

---

[15]   Simply because this Court lacks subject matter jurisdiction over the Plaintiffs' claims does not mean that they were not afforded a means to adjudicate the way in which Rule 40A was enacted, and ultimately used to remove Turner, in the state courts.   Plaintiffs could have availed themselves of Massachusetts General Laws, Chapter 231A which allows in pertinent part for:

> The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not; and such proceeding shall not be open to objection on the ground that a merely declaratory judgment or decree is sought thereby and such declaration, when made, shall have the force and effect of a final judgment or decree and be reviewable as such. . .

[16]   This is even further demonstrated by the Plaintiffs' reliance on Reynolds v. Simms, 377 U.S. 533, 565 (1964), as the *sole* case cited in support of the supposition that Plaintiffs suffered a constitutional harm.   Reynolds does not espouse a constitutional right to hold office or a constitutional right to keep a particular candidate in office; rather it extended the one-person one-vote doctrine to state elections under the Equal Protection Clause.   Id.

**E.   Because Plaintiffs Have No Likelihood of Success On the Merits Their Motion for A Preliminary Injunction Must be Denied.**

For the same reasons the Defendants are entitled to summary judgment, Plaintiffs' motion for injunctive relief must be denied.  Plaintiffs have no likelihood of success on the merits because Rule 40A does not run afoul of the Constitution.  Furthermore, Plaintiffs cannot show that they will suffer any irreparable harm.  Rule 40A has been on the books for nearly two years.  It was enacted *after* Turner was indicted with *his* endorsement.  He was removed from office on December 1, 2010 and did not file this lawsuit until nearly one month later on December 30, 2010.  Thus, any alleged harm to Turner is negligible.  The Plaintiff-voters are not subject to harm as they are not only represented by an at-large City Councilor, but Turner himself continues to advocate on their behalf.  SOF at ¶ 11.

Finally, the interest of the public supports Turner's removal from office.  Turner was convicted by a jury of one count of attempted extortion and three counts of making false statements to federal authorities, all of which are felonies.  Due to these convictions, the City Council voted to remove Turner and began the process for a preliminary election to be held on February 15, 2011 and a final election to be held on March 15, 2011.  Several potential candidates have processed the necessary paperwork indicating their interest in running for the District 7 seat.  In the event that Turner is sentenced to prison on January 25, 2011, he must vacate his Council position by operation of law.  M.G.L. c. 279, § 30.  The public interest not only supports a removal from office of a City Councilor who was found guilty of extortion and lying in relation to his role as a Councilor, but it also supports moving forward with the properly called special election so that a qualified candidate can be elected by all the voters of District 7 who cast their vote in the special election.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Honorable Court deny Plaintiffs' request for preliminary injunction, declaratory relief and motion for summary judgment and enter summary judgment in favor of the Defendants.

| | |
|---|---|
| | Respectfully submitted, |
| **CERTIFICATE OF SERVICE** | DEFENDANTS, |
| | |
| I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants. | William F. Sinnott, Corporation Counsel By their attorneys, |
| | |
| | /s/ Lisa Skehill Maki Lisa Skehill Maki, BBO # 675344 Assistant Corporation Counsel |
| 1/21/2011   /s/ Lisa Skehill Maki Date          Lisa Skehill Maki | Susan M. Weise, BBO # 545455 First Assistant Corporation Counsel Maribeth A. Cusick, BBO # 658839 Chief of Government Services City of Boston Law Department One City Hall Plaza, Room 615 Boston, MA 02201 (617) 635-4022 (Maki) (617) 635-4040 (Weise) (617) 635-4477 (Cusick) Lisa.Maki@cityofboston.gov Susan.Weise@cityofboston.gov Maribeth.Cusick@cityofboston.gov |

### 7.1 Certification

Undersigned counsel certifies that on January 21, 2011, pursuant to LR, D. Mass. 7.1(a)(2), counsel for the Defendants, Lisa Skehill Maki, spoke with counsel for the Plaintiffs and was unable to resolve or narrow the issues.

Date:   January 21, 2011           /s/ Lisa Skehill Maki   
                                    Lisa Skehill Maki