**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 2010-CV-12276**

<table>
<tr><td>

**CHARLES H. TURNER, and JEANNE ACKERLY, ERNEST R. COSTON, DIANE DUJON, OLGA SUMMONT, LOUIS ELISA, ALMA FINNERAN, MICHAEL HEICHMAN, FREDERICK C. JOHNSON, KARL JONES, FRANCO MARZURKI, CAROLYN JUPITER-MCINTOSH, ISAURA MENDES, JUDITH RICHARDS, M. DANIEL RICHARDSON III, SARAH-ANN SHAW**
        **Plaintiffs,**
**v.**

**CITY OF BOSTON, and BOSTON CITY COUNCIL and MICHAEL ROSS, FELIX G. ARROYO, JOHN R. CONNOLLY, STEPHEN J. MURPHY, AYANNA PRESSLEY, SALVATORE LaMATTINA, BILL LINEHAN, MAUREEN E. FEENEY, ROB CONSALVO, MARK S. CIOMMO AND MATTHEW O'MALLEY in their official capacities.**
        **Defendants.**

</td></tr>
</table>

**DEFENDANTS' RESPONSE TO THIS**
**COURT'S JANUARY 14, 2011 ORDER**

---

## I.  INTRODUCTION

 The Defendants, City of Boston, Boston City Council, Michael Ross, Felix G. Arroyo, John R. Connolly, Stephen J. Murphy, Ayanna Pressley, Salvatore LaMattina, Bill Linehan, Maureen E. Feeney, Rob Consalvo, Mark S. Ciommo and Mattew O'Malley (collectively, the "Defendants") hereby respond to this Court's Order dated January 14, 2011, in which the Court requested briefing on: (a) whether or not this court should abstain and require a new case to be brought in state court, or certify one or more questions to the Supreme Judicial Court rather than be the first court to address whether the Council exceeded its authority in promulgating Rule

40A and utilizing it to remove Charles Turner ("Turner") from office; (b) if abstention or certification is necessary or appropriate, which option the court should choose; and (c) if one or more questions are certified to the Supreme Judicial Court, how the question(s) should be stated.

The Defendants submit that abstention under the <u>Pullman</u> doctrine is not appropriate in this case because the issue of whether Boston City Council Rule 40A ("Rule 40A") was enacted within the authority of the Boston City Council, would not render moot or materially alter the underlying issue raised by the Plaintiffs—whether Turner's removal from the City Council by means of the *application* of Rule 40A ran afoul of the United States Constitution.  Thus, this Court should not abstain but instead, should rule on the merits of Plaintiffs' federal constitutional claims.

In the alternative, should the Court determine that it ought not decide the constitutional issue without first obtaining a ruling on the validity of Rule 40A from the courts of the Commonwealth of Massachusetts, the Defendants submit that abstention, rather than certification of the question of Rule 40A's validity to the Supreme Judicial Court, is appropriate.  This is because certification would be superfluous, as it will not alter or obviate the need for a ruling on the federal question before this Court.  Further, as the Court alluded to in its Order of January 14, 2011, if the Supreme Judicial Court cannot provide injunctive relief through certification, then the City may be forced to needlessly expend resources in preparation for an upcoming election that could be nullified if Rule 40A is invalidated and Turner is not sentenced to prison. Conversely, if Turner is sentenced to prison on January 25, 2011, this matter lacks any urgency to require an immediate answer from the SJC because state law would bar him from being reinstated and he would only be entitled to compensatory damages.  Similarly, in those circumstances, a remedy for the Plaintiff-voters' would be limited.

Finally, should this Court deem certification most appropriate, the Defendants request that this Court certify only the question of whether Rule 40A is valid under Massachusetts law. As the Supreme Court of the United States has already determined that disenfranchisement laws are civil in nature and not criminal and such, do not violate the Ex Post Facto Clause of the United States Constitution.  Certification of a question on this point of law is unnecessary.

## II.    BACKGROUND

In the interest of brevity, the Defendants hereby incorporate by reference the Factual Background contained in Defendants' Opposition to Plaintiffs' Motion for Injunctive Relief, or in the Alternative Summary Judgment, and Defendants' Cross-Motion for Summary Judgment. (hereinafter, "Defendants' Opposition").

## III.    ARGUMENT

### 1.    This Case Is Not Appropriate For <u>Pullman</u> Abstention.

Although courts should ordinarily refrain from ruling on the constitutionality of a state statute if the state law is unclear and is capable of construction by state courts in a manner that would avoid the constitutional question, Railroad Commission v. Pullman Co., 312 U.S. 496, 500 (1941), "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976).  In general, abstention is,

> an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959).

The federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817.  Abstention "is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." Baggett v. Bullitt, 377 U.S. 360, 375 (1964).

In determining whether Pullman abstention is appropriate, the First Circuit considers the following two factors:  "(1) whether there is substantial uncertainty over the meaning of the state law at issue; and (2) whether a state court's clarification of the law would *obviate* the need for a federal constitutional ruling." Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 (1st Cir. 2001) (emphasis added).  Neither of these conditions is present in this case because there is no uncertainty over the *meaning* of Rule 40A and clarification from the Massachusetts Supreme Judicial Court would not obviate the need for the federal constitutional ruling because the rule has already been enforced, and thus this Court must address whether any constitutional injury was caused by that enforcement.

### a.    A Clarification of Whether Rule 40A Is Valid Would Not Obviate The Need For A Federal Constitutional Ruling.

Pullman abstention "is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent, but unsettled, state law." Guiney v. Roache, 833 F.2d 1079, 1081 (1st Cir. 1987). "Where state law is unsettled, a federal court's resolution of the state law question will inevitably be "a forecast rather than a determination . . . a tentative answer which may be displaced tomorrow by a state adjudication." Pullman, 312 U.S. at 499-500.  The Supreme Court has "frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 237 (1984). "Where there is no ambiguity in the state statute, the federal

court should not abstain but should proceed to decide the federal constitutional claim." Wisconsin v. Constantineau, 400 U.S. 433, 439 (1970). "If state law questions are unambiguous, abstention is inappropriate." Mangual v. Rotger-Sabat, 317 F.3d 54, 63 (1st Cir. 2003). The Pullman abstention is often appropriate where the federal claim is "entangled in a skein of state law that *must* be untangled before the federal case can proceed." McNeese v. Board of Education, 373 U.S. 668, 674 (1963) (emphasis added).

Here, abstention is not appropriate because a determination of the validity of Rule 40A is of no consequence to Plaintiffs' claims that the *removal* of Turner from office deprived them of their Constitutional rights. See *Plaintiffs' Motion for Injunctive Relief, Declaratory Judgment, or in the Alternative, Summary Judgment* (hereinafter "*Plaintiffs' Instant Motion*") at p. 12-14. In other words, a determination by either this Court or the state court, on whether Rule 40A was valid, need not be determined before the federal questions can be decided because it is the removal of Turner through the application of Rule 40A, not the enactment of Rule 40A, that is the foundation of Plaintiffs' constitutional claim. Here, Pullman abstention is not appropriate because the purpose of abstention is to "avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues." Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997). Rule 40A is not "antecedent" to the federal constitutional issues because the Plaintiffs seek *post-deprivation* relief from the application of Rule 40A.

A determination that the enactment of Rule 40A was *ultra vires* by either this Court or the state court will not render the removal of Turner from office unconstitutional *per se*. The question would still remain: Was the removal of Turner from office pursuant to Rule 40A a violation of the Plaintiffs' constitutional rights? Likewise, a determination in favor of the Defendants would not moot the allegations in Plaintiffs' Complaint—that their constitutional

rights were violated when Turner was removed from office on December 1, 2010.  Thus, this Court should not abstain, and instead rule on the constitutional claims brought by the Plaintiffs.

The various state and federal courts interpreting the <u>Pullman</u> abstention doctrine favor abstention if a state law may be rendered a nullity *and the constitutional question can be avoided*.  Here, however, the nullification of Rule 40A would not avoid the constitutional question because Rule 40A has *already* been enforced and as such, the constitutional harm, if any, has *already* occurred.  <u>See</u> <u>Robinson v. City of Omaha, Nebraska</u>, 866 F.2d 1042, 1045 (8th Cir. 1989) (abstaining based on possibility that local law, *prior to enforcement*, could be invalidated under state law, and thus the constitutional question would not arise as the statute would have no legal effect); <u>see</u> <u>also</u> <u>Robinson v. City of Omaha, Nebraska</u>, 495 N.W.2d 281, 282 (Neb. 1993) (local law required candidate to resign from government position before running for office; *instead* of resigning, candidate brought action in United States District Court, thus any constitutional harm had not yet occurred).

Similarly, in <u>Sherman v. Town of Chester</u>, the Southern District of New York found that the plaintiff's federal claim did not turn on the resolution of whether the town acted *ultra vires* in enacting a local law to block the plaintiff's property development.  <u>Sherman v. Town of Chester</u>, 2001 WL 1448613, 3 (S.D.N.Y. 2001).  Instead, the court found that the federal claim turned on whether the plaintiff had a constitutionally protected property interest in his permit to build.  <u>Id</u>. Consequently, the validity of the local law was not "antecedent" to resolving the issue.  <u>Id</u>. (citing <u>Arizonans for Official English</u>, 520 U.S. at 76 (1997)).  This case is analogous because Turner alleges he had a constitutional right to hold office.  Likewise, the Plaintiff-voters allege that they had a constitutional right to keep Turner in office.  Accordingly, Plaintiffs' claims turn

on whether they had a constitutionally protected right in Turner's elected office and whether that right was violated when he was forced to vacate it.

Conversely, in <u>Brown v. Tidwell</u>, the prisoner plaintiffs brought a 42 U.S.C. § 1983 claim challenging the validity of a state law that required them to pay jail fees.  169 F.3d 330, 331 (6th Cir. 1999).  The plaintiffs alleged that the compelled payment of fees constituted a deprivation of property without due process of law.  <u>Id</u>.  There, the Court abstained from hearing the plaintiffs' claims on the grounds that if the state court were to determine that the state's collection of fees was valid under state law, the collection itself was not *per se* unconstitutional.  <u>Id</u>. at 332-33.  Unlike the Plaintiffs in <u>Brown</u>, the Plaintiffs here challenge the constitutionality of Rule 40A *itself* once the City Council acted upon it.  The gravaman of Plaintiffs' Complaint is that the actual removal of Turner from office is what caused their constitutional injury.  <u>See</u> *Plaintiffs' Instant Motion* at Section 1, p. 12 ("if the Defendants are not enjoined, Plaintiffs will continue to suffer irreparable harm from the *enforcement* of the Defendants' unconstitutional laws and actions.") (emphasis added); Section I(iv) ("the enforcement of facially unconstitutional laws resulting in the loss of First Amendment freedoms . . . constitutes the type of irreparable harm necessitating preliminary injunction.").  <u>Id</u>.

Nowhere in their Complaint do the Plaintiffs concede that the removal of Turner from office would have been constitutional as long as Rule 40A was a valid exercise of City Council

7

authority.  Otherwise, it would be manifest that their claims were brought in the wrong forum.[1]

Hence, because the City Council has utilized Rule 40A to remove Turner from office, its validity

is immaterial to the Plaintiffs' constitutional claims.

Lastly, unlike the seminal <u>Pullman</u> case, the resolution of whether Rule 40A was enacted

pursuant to the City Council's authority will have no effect on the remaining constitutional

questions.  <u>Cf</u>. <u>Pullman</u>, 312 U.S. at 501.  In <u>Pullman</u>, the plaintiff-rail road company sought to

*prevent* the enforcement of a racially discriminatory law before its implementation was enacted

outside the authority of the Rail Road Commission and because its application would be

unconstitutional.  312 U.S. at 497-98.  The Court ordered abstention because, if the law was

rendered invalid by the state court, no constitutional wrong would occur.  <u>Id</u>. at 501.  Here,

however, Rule 40A has *already* been enforced.  Turner was removed from office December 1,

2010.  Thus, a nullification of Rule 40A by the state court would not prevent the occurrence of a

constitutional harm because it has allegedly *already* occurred.

**B. Should The Court Deem It Necessary To Obtain An Opinion From The Massachusetts Supreme Judicial Court On the Validity Of Rule 40A, This Court Should Abstain Rather Than Certify The Question To The Supreme Judicial Court.**

Should this Court deem it necessary for the state court to opine on the validity of Rule

40A before ruling on the Plaintiffs' federal claims, abstention, rather than certification, is

appropriate.  First, the question of whether Rule 40A was validly enacted would not be

"determinative" of the federal constitutional issues presently before the Court.  Supreme Judicial

---

[1]     If the Plaintiffs' claims are such—that the enactment of Rule 40A was in violation of state law and that, in and of itself, is a violation of their constitutional rights—then dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, is warranted.  A violation of a state law by a state official alone, is not cognizable under § 1983 because § 1983 serves to remedy only violations of federal statutory and constitutional rights.  <u>Rector v. City and County of Denver</u>, 348 F.3d 935, 947 (10th Cir. 2003) ("It is well-established . . . that a state's violation of its own laws does not create a claim under § 1983.") (<u>citing</u> <u>Davis v. Scherer</u>, 468 U.S. 183, 194-96 (1984)).

Court Rule 1:03 (Section 1) provides, in relevant part: "This court may answer questions of law certified to it by . . . a United States District Court . . . if there are involved in any proceeding before it questions of law of this state which may be *determinative* of the cause then pending in the certifying court . . .." (emphasis added).

Furthermore, abstention, rather than certification to the SJC, would be the more appropriate action for this Court because the question of Rule 40A's validity should have been brought in state court in the first instance. If Rule 40A was *ultra vires*, which the Defendants vehemently deny, a determination and subsequent remedy by the state court would be in the best interests of both parties due to the upcoming special elections. As noted by this Court, it is uncertain whether the parties may obtain injunctive relief through certification. Rogers v. Okin, 738 F.2d 1, 4 (1st Cir. 1984) (noting certified answer from Supreme Judicial Court not "directly enforceable judgment").

It is possible that if the SJC were to find that Rule 40A was *ultra vires* on a certified question, and if Turner was not sentenced to a period of incarceration, the SJC's decision could require the reinstatement of Turner to office, even if a special election was held and resulted in another candidate voted into office. Such a result would negatively impact the public interest; whereas if this Court abstained and Plaintiffs filed their claims in state court, the state court would have the authority to enjoin the special election from proceeding before the statutory issue was resolved. The latter process would preserve the public interest in the integrity of the electoral process and would preserve municipal resources necessary to support the special election.

Since the Plaintiffs waited nearly a month to seek after-the-fact redress in *any* court and the filing of their Complaint preceded the threat of Turner's statutory removal by only twenty-six

days, they cannot now argue that time is of the essence. Astonishingly, the Plaintiffs have been on notice since Turner's conviction on October 29, 2010 that he could be unseated by application of Rule 40A, yet did nothing to contest the validity of that Rule until a month after his removal. Further, it would be an exercise in futility for the SJC to hastily render an answer as to the validity of Rule 40A, when that answer may have only a marginal effect on the outcome of this matter based on Chapter 279 §30. Finally, because the question as to the validity of Rule 40A is a matter of first impression, the Defendants should be allowed a full and fair opportunity to litigate the validity of Rule 40A in state court. Thus, for the reasons mentioned in this Court's January 14, 2011 Order, the issues presented weigh in favor of abstention, rather than certification.

### C. Should The Court Determine That Certification Is Necessary, The Defendants Propose That The SJC Determine Only The Validity Of Rule 40A Under Relevant State Law.

Should this Court determine that certification to the SJC is necessary; the Defendants propose the following question:

> 1. Was Rule 40A enacted within the authority of the City Council under the City of Boston Charter and relevant state law interpreting similar language to that of the City of Boston Charter?

The Defendants do not propose that the SJC address whether Rule 40A was criminal in nature as that answer was foreclosed by the Supreme Court in <u>Trop v. Dulles</u>, 356 U.S. 86, 95-96 (1986). In <u>Trop</u>, the Supreme Court held that disenfranchisement laws, despite having a penal effect, are <u>civil in nature</u>. <u>Id.</u> at 96. Most recently in, <u>Simmons v. Galvin</u>, this Court held that a felon disenfranchisement law was a civil regulatory law that did not violate the Ex Post Facto Clause of the United States Constitution. <u>Simmons v. Galvin</u>, 652 F.Supp.2d 83, 92-94 (2007) *aff'd in part, rev'd in part by*, <u>Simmons v. Galvin</u>, 575 F.3d 24, 26 (1st Cir. 2009) (affirming

district court's grant of summary judgment on Ex Post Facto claim by disenfranchised felons under Mass. Gen. Laws, Chapter 51, § 1).

Because the removal of Turner from elected office is similar to the disenfranchisement of incarcerated felons,[2] and nothing in the language of Rule 40A indicates that it is intended to impose criminal punishment, it is civil in nature and as such, the Ex Post Facto Clause of the United States Constitution is not violated.  The SJC, therefore, need not opine as to whether Rule 40A is civil or criminal in nature.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants request that this Honorable Court not abstain and instead, rule on the Plaintiffs' constitutional claims emanating from the removal of Turner from office.   In the alternative, the Defendants seek to have the court abstain and dismiss Plaintiffs' claims.  Finally, should the Court deem certification necessary, the Defendants request this Court only certify a question regarding the validity of Rule 40A to the SJC.

---

[2]      To avoid redundancy, Defendants' arguments that the removal of an elected official from office is the equivalent of the disenfranchisement of a felons' right to vote under Section 2 of the Fourteenth Amendment, are incorporated by reference as set forth in Defendants' Opposition, which was filed simultaneously with the instant Response.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

1/21/2011   /s/ Lisa Skehill Maki
Date            Lisa Skehill Maki

Respectfully submitted,
DEFENDANTS,

William F. Sinnott,
Corporation Counsel
By their attorneys,


/s/ Lisa Skehill Maki
Lisa Skehill Maki, BBO # 675344
Assistant Corporation Counsel
Susan M. Weise, BBO # 545455
First Assistant Corporation Counsel
Maribeth A. Cusick, BBO #
Chief of Government Services
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201
(617) 635-4022 (Maki)
(617) 635-4040 (Weise)
(617) 635-4477 (Cusick)
Lisa.Maki@cityofboston.gov
Susan.Weise@cityofboston.gov
Maribeth.Cusick@cityofboston.gov