UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
CHARLES H. TURNER, ET AL          )
     Plaintiffs                   )
                                  )
          v.                      )   C.A. No. 10-12276-MLW
                                  )
                                  )
CITY OF BOSTON, ET AL             )
     Defendants.                  )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                    February 7, 2011

I.  SUMMARY

In a companion February 7, 2011 Memorandum and Order, this court has denied the motion of the plaintiffs, Charles "Chuck" Turner and fifteen voters of the District 7 he represented, to enjoin the February 15, 2011 special preliminary municipal election and the March 15, 2011 special municipal election to fill Turner's now admittedly vacant seat on the Boston City Council (the "Council").  The issue, discussed in the January 14, 2011 Memorandum and Order, remains concerning whether or not this federal court should abstain or certify certain questions of state law for decision by the Supreme Judicial Court of the Commonwealth of Massachusetts because authoritative decisions on those issues may obviate the need to decide the federal constitutional questions in this case.  See Railway Commission v. Pullman Co., 312 U.S. 496 (1941).  The parties have responded to the January 14, 2011 Memorandum and Order.  They oppose either abstention or certification.  Nevertheless, for the reasons described in this

Memorandum, the court is now certifying two questions to the Supreme Judicial Court and staying this case until a response to those questions is received.

II. BACKGROUND

In 2008, Turner was charged with committing extortion in violation of 18 U.S.C. §1951, and other federal crimes. On January 25, 2009, the Council, acting pursuant to authority asserted to exist under the Charter of the City of Boston, adopted a new Rule 40A, which permits an elected Councillor to be removed, by a vote of two-thirds of the members of the Council, for "conduct unbecoming of a member," including conviction of a felony.[1] Turner was convicted of several felonies on October 29, 2010. On December 1, 2010, the Council, by a vote of eleven to one, decided to remove

---

[1] Rule 40A provides:

Pursuant to the city charter and in accordance with the open meeting law, the council president may refer a matter to the council upon his/her determination that any member has engaged in conduct unbecoming a member of the Boston City Council or may be unqualified to sit on the body. A member may be unqualified by violating federal or state law, or any conditions imposed by the city's charter, which includes violating any provisions of the three oaths of office.

The council president shall automatically refer a matter to the council upon a felony conviction of any member by any state or federal court. Any action by the council taken in response to any referral shall require a two-thirds (2/3) majority roll call vote and will be in accordance with local, state and federal law.

Turner from office effective December 3, 2010.  The Council cited the Charter of the City of Boston, see Acts of 1951 c.376, §17, and Rule 40A as the authority for its action.

On December 15, 2010, to fill Turner's seat, the Council scheduled a special preliminary municipal election for February 15, 2011 and a special final municipal election for March 15, 2011.

On December 30, 2010, Turner and fifteen voters from District 7, which he was elected to represent, filed the instant action, seeking declaratory and injunctive relief.  Turner also seeks damages. Plaintiffs allege that the Council exceeded its authority under state law in removing Turner from office.  They assert that as a result of this violation of state law, they have been deprived of certain rights protected by the Constitution of the United States. See Complaint, ¶¶27, 31. More specifically, Turner contends that Rule 40A is a criminal sanction.  Therefore, he asserts that, as applied to him, Rule 40A violates the Ex Post Facto Clause of the Constitution, U.S. Const. art. I, §10, and his rights under the First and Fourteenth Amendments to the United States Constitution. See Complaint, ¶27.  The voter plaintiffs contend that the Council's violation of state law in expelling Turner has disenfranchised them and, therefore, violated their rights under the First and Fourteenth Amendments to the United States Constitution.  See id. ¶2.

On January 10, 2011, plaintiffs filed a motion for a

-3-

preliminary injunction or, in the alternative, for summary judgment. They requested that this federal court exercise its equitable power to enjoin the February 15, 2011 special preliminary municipal election and the March 15, 2011 special municipal election. They also asked the court to restore Turner to his position on the Council. Defendants submitted an opposition to this motion.

On January 25, 2011, Turner was sentenced to serve three years in a federal prison. As the parties agree, pursuant to M.G.L. c. 279, §30, that sentence would automatically remove Turner as a member of the Council if he still held that office on January 25, 2011.[2] Therefore, there is now a vacancy in that office whether or

---

[2]  Massachusetts General Laws c. 279, §30 provides:

If a convict sentenced by a court of the commonwealth or of the United States to imprisonment in the state prison or by a court of the United States to a federal penitentiary for a felony holds an office under the constitution or laws of the commonwealth at the time of sentence, it shall be vacated from the time of sentence. If the judgment against him is reversed upon writ of error, he shall be restored to his office with all its rights and emoluments; but, if pardoned, he shall not by reason thereof be restored, unless it is so expressly ordered by the terms of the pardon.

The parties agree that Turner's sentencing on January 25, 2011, operated to remove him automatically from the Council if his seat was not vacated before that time. For example, plaintiffs have stated that:

If under M.G.L. c. 279, §30 Plaintiff Turner is sentenced to prison on January 25, 2011, his seat would not become vacant until that date.

not Turner was lawfully removed by vote of the Council on December 1, 2010.   For the reasons described in the companion to this Memorandum and Order, plaintiffs' motion to enjoin the special preliminary municipal election scheduled for February 15, 2011, and the special municipal election scheduled for March 15, 2011 has been denied. <u>See</u> Feb. 7, 2011 Memorandum and Order.

However, pursuant to 42 U.S.C. §1983, Turner still seeks damages, including back pay, for the alleged violation of his rights under the United States Constitution that resulted from his expulsion from the Council, which he contends violated state law. <u>See</u> Complaint at 7.   Therefore, this case is not moot. Accordingly, it remains necessary that the court decide whether or not to abstain or to certify one or more questions to the Supreme Judicial Court.

III.   DISCUSSION

The parties acknowledge that plaintiffs' federal claims depend entirely on their contention that the removal of Turner from office

---

Pls.' Mem. Addressing the Issues Raised in This Court's Mem. and Order of January 14, 2011, at 5.  Similarly, defendants have stated that:

> In the event that Turner is sentenced to prison on January 25, 2011, he must vacate his Council position by operation of law.

Defs.' Mem. of Law in Support of Their Opp. to the Pls.' Req. for Inj. Relief, Declaratory J., or in the Alternative for Summ. J. and Defs.' Cross-Mot. for Summ. J. at 22.

exceeded the power granted to the Council by the laws of the Commonwealth of Massachusetts.  For example, plaintiffs state:

> This case is about the unlawful votes of the Boston City Council to remove a duly elected member from the city council and the vote calling for a special election to fill his seat . . . . Because the current electoral process is seriously flawed due to votes taken by the council that were _ultra_ _vires_ and based on invalid law, the process must be stopped.

Pls.' Mem. of Law in Supp. of Their Req. for Inj. Relief, a Declaratory J., or in the Alternative for Summ. J. at 2. Similarly, in contending that federal jurisdiction does not exist in this case, defendants state:

> As demonstrated by the twenty-seven out of a total of twenty-nine pages of argument devoted to the mechanics by which Rule 40A was enacted, Plaintiffs' divergence with the Defendants' interpretation of the City Charter is the driving force of this cause of action.  That issue however, is purely one of state law . . . .

Defs.' Mem. of Law in Supp. of Their Opp'n to the Pls.' Req. for Inj. Relief, Declaratory J., or in the Alternative for Summ. J. and Defs.' Cross-Mot. for Summ. J. at 20.

As the parties recognize, if the Council had the authority under state law to promulgate Rule 40A and employ it to remove Turner, and if the Rule is civil rather than criminal in nature, no violation of the Constitution has occurred.  Therefore, an authoritative ruling on these uncertain issues may obviate the need to decide the federal, constitutional questions presented. Accordingly, this is a classic case for _Pullman_ abstention or certification of the potentially dispositive state law questions to

-6-

the Supreme Judicial Court. <u>See</u> <u>Pullman</u>, 312 U.S. at 501-02 (abstention); <u>Mills v. Rogers</u>, 457 U.S. 291, 306 (1982) (certification is a permissible alternative to abstention).

Principles relating to the separation of powers and federalism encourage federal courts not to decide constitutional questions unnecessarily. <u>See, e.g.</u>, <u>Ashwander v. Tennessee Valley Auth.</u>, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring). In 1941, the Supreme Court applied this general principle in circumstances comparable to those in the instant case. <u>See Pullman</u>, 312 U.S. at 501. In <u>Pullman</u>, the plaintiffs alleged that the Texas Railway Commission lacked the authority under state law to issue an order that, in effect, required that every railway car have a conductor, who at that time would have been white, rather than only a porter, who at that time would have been black. <u>Id.</u> at 497-98. The plaintiffs contended that the Commission's order violated state law and resulted in a violation of their rights under the United States Constitution. <u>Id.</u> The Supreme Court held that respect for the states, the value of getting an authoritative decision on a question of state law from the state court, and the importance of not deciding federal constitutional issues unnecessarily, required the federal court, sitting in equity, to stay further action pending a definitive ruling by the state courts because the case involved a substantial question of uncertain state law and a reasonable possibility that an authoritative decision on that

question would obviate the need to decide the federal constitutional questions. Id. at 499-501; see also Erwin Chemerinsky, Federal Jurisdiction §12.2 at 790-94 (5th ed. 2007). As the First Circuit has stated:

> The Pullman variety of abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent, but unsettled state law . . . . Because the state adjudication might alter or moot the federal constitutional question, Pullman abstention serves a dual purpose: it "avoid[s] the waste of a tentative decision as well as the function of a premature constitutional adjudication."

Guiney v. Roache, 833 F.2d 1079, 1051 (1st Cir. 1987) (quoting Pullman, 312 U.S. at 499).

Contrary to defendants' contention, Pullman abstention is not justified only in cases in which the meaning of the law at issue is uncertain. See, e.g., Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 (1st Cir. 2001). In Pullman, the Railway Commission's order requiring a conductor on every train was perfectly clear. See 312 U.S. at 497-98. The plaintiffs, however, "assailed the order as unauthorized by Texas law as well as violative of the Equal Protection, the Due Process and the Commerce Clauses of the Constitution." Id. at 498.

The Supreme Court subsequently reaffirmed that Pullman abstention applies when it is argued that unconstitutional action also exceeds the authority granted by state law. In Harris County Commissioners Court v. Moore, 420 U.S. 77, 78 (1975), displaced

state officials, and voters in their districts, sought to enjoin the operation of a Texas statute that provided for their removal after redistricting.  A three-judge panel of the federal court ruled the Texas statute unconstitutional under the Fourteenth Amendment.  Id.  The Supreme Court reversed and ordered abstention. Id. at 88-89. After stating that abstention is appropriate where the "meaning" of a state law is unclear, the Court wrote:

> The same considerations apply where, as in this case, the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute.  Here resolution of the question whether the Texas Constitution permits the County Commissioners Court to replace constables and justices of the peace when several live in the same precinct will define the scope of [the challenged law] and, as a consequence, the nature and continued vitality of the federal constitutional claim.

Id. at 84-85 (footnote omitted).  The Court added, "[w]here the challenged statute is part of an integrated scheme of related [state] constitutional provisions, statutes, and regulations, and where the scheme as a whole calls for clarifying interpretation by the state courts, we have regularly required the district courts to abstain." Id. at 85 n.8.

Similarly, in Brown v. Tidwell, the Sixth Circuit found Pullman abstention to be appropriate because the plaintiffs, prisoners who were being charged a fee:

> ask first that we interpret the two Tennessee statutes as making the fee collection practice illegal, and then that we declare the "illegal" practice an unconstitutional deprivation of property.  Their claims thus rest ultimately on interpretation of the statutes.

169 F.3d 330, 332 (6th Cir. 1999).  Finding the questions of state law unclear, the Sixth Circuit concluded that, "[w]here uncertain questions of state law must be resolved before a federal constitutional question can be decided, federal courts should abstain until a state court has addressed the state questions." Id. (citations and quotations omitted).

Indeed, in Robinson v. City of Omaha, the Eighth Circuit raised the issue of abstention itself and found the district court had improperly failed to abstain to allow the Nebraska state courts to decide if a City Charter provision and ordinance prohibiting city employees from running for office was unlawful in view of a state statute that only prohibited them from doing so during normal working hours.  See 866 F.2d 1042, 1043-45 (8th Cir. 1989).  The Eighth Circuit concluded that:

> It is entirely possible that the Nebraska courts will decide that the statute prohibits Omaha from preventing Robinson's candidacy.  If this occurs [the disputed Charter provision and ordinance] would be nullified.  If the Nebraska courts construe the statute in this manner, the interpretation of the statute will obviate the federal constitutional issue.

Id. at 1045.

This court recognizes that "[i]f state law questions are unambiguous, abstention is inappropriate." Manqual v. Rotger-Sabat, 317 F.3d 45, 62 (1st Cir. 2003). Cf. Bellotti v. Baird, 428 U.S. 132, 148 (1976) (to warrant certification "[i]t is sufficient that the statute is susceptible of . . . an interpretation [that] would

avoid or substantially modify the federal constitutional challenge to the statute"); <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 77 (1997) (same).  Contrary to the parties contentions, this is not a case in which the central state law questions are unambiguous.

The questions of whether the promulgation of Rule 40A, and the use of it to expel Turner, exceeded the Council's authority under state law and, in any event, constituted a criminal sanction, have not been decided by any state court.  Nor are the answers to them evident.

Defendants note that the Charter of the City of Boston provides that the Council "shall be the judge of the election and qualification of its members."  <u>See</u> Act of 1951 c. 376, §17. They contend that this provision gave the Council the authority to promulgate Rule 40A and to use it to remove Turner from office after his conviction.  However, this provision of the Charter could reasonably be interpreted to provide the Council the authority to decide the eligibility of candidates to hold office and the outcome of an election, but not the power to remove a Councillor who was a qualified candidate and duly elected.  Similarly, the fact that M.G.L. c. 279, §30 expressly provides for the automatic removal of a state or local official who is sentenced to prison may or may not indicate that municipalities have the power to remove officials in other circumstances.  <u>See U.S. Term Limits, Inc. v. Thornton</u>, 514

-11-

U.S. 779, 793 n.9 (1995) (discussing competing arguments concerning whether qualifications for members of Congress stated in Constitution prevent states from requiring additional qualifications); <u>Hewlett-Packard Co. v. Berg</u>, 61 F.3d 101, 106 (1st Cir. 1995) ("<u>expressio</u> <u>unis</u> is an aid to construction and not an inflexible rule"); <u>United States v. Mass. Bay Transp. Auth.</u>, 614 F.2d 27, 28 (1st Cir. 1980) (principle <u>expressio</u> <u>unius</u> <u>exclusio</u> <u>alterius</u>, "mention of one thing excludes another," is "a suggestive guide to interpretation").   Similarly, it is not clear that plaintiffs are correct in claiming that the Council lacked the authority to promulgate and employ Rule 40A.  Massachusetts General Laws c. 279, §30 does not necessarily preempt the field.  <u>See</u> <u>U.S. Term Limits, Inc.</u>, 514 U.S. at 793 n.9; <u>Hewlett-Packard</u>, 61 F.3d at 106; <u>Mass. Bay Transp. Auth.</u>, 614 F.2d at 28.

Of the cases cited by the parties, only one addresses the Charter of the City of Boston.  <u>See</u> <u>Peabody v. Sch. Comm. of Boston</u>, 115 Mass. 383, 384-85 (1874).  <u>Peabody</u>, however, did not involve the removal of a duly elected and seated official.  Rather, it concerned whether the Boston School Committee could refuse to seat the winner of an election on the grounds that she was a woman.  <u>Id.</u> at 383.  Moreover, the court's holding, that it lacked jurisdiction to render a decision based on the language of the Boston Charter, does not address or resolve the merits of the present case.  <u>See</u> <u>id.</u> at 387.  Similarly, the Charter of the City

of Boston has been amended since <u>Peabody</u> was decided.  The other cited cases involve the charters of other municipalities, which may differ from the Boston Charter in material respects.  <u>See</u> <u>Attorney General v. McHatton</u>, 428 Mass. 790, 791-92 (1999) (involving disqualification of convicted felon under a provision in Chelsea charter which stated that a person convicted of a criminal offense involving misconduct in office was not eligible to serve in any other Chelsea office); <u>Caba v. Probate Court</u>, 363 Mass. 132, 133-34 (1973) (addressing whether Agawam charter prohibited holding two town offices at one time); <u>Lafleur v. City of Chicopee</u>, 352 Mass. 746 (1967)(involving results of a referendum under the Chicopee charter).

The issue of whether Rule 40A is civil or criminal in nature will determine whether its use to remove Turner violated his rights under the Ex Post Facto Clause of the United States Constitution, art. I, §10, which prohibits the imposition of punishment that was not provided for at the time the criminal conduct occurred.  The Supreme Court has held that "[t]he categorization of a particular proceeding as civil or criminal is 'first of all a question of statutory construction.'" <u>Kansas v. Hendricks</u>, 521 U.S. 346, 361 (1997) (quoting <u>Allen v. Illinois</u>, 478 U.S. 364, 368 (1986)).  A series of factors must be considered t to decide this question. <u>See</u> <u>Hudson v. United States</u>, 522 U.S. 93, 99 (1997) (two step inquiry into legislative intent and effects of legislation);

-13-

Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963) (discussing seven factors to be considered when determining whether a matter involves a civil remedy or a criminal penalty). As Rule 40A was promulgated after Turner was indicted, it is susceptible to being found to be criminal in nature. Cf. Bellotti, 428 U.S. at 148. As it is a provision of state, rather than federal, law that must be construed, it is most appropriate that the state courts do so authoritatively. See Harris County Commissioners Court, 420 U.S. at 84-85; Pullman, 312 U.S. at 499-500; Robinson, 866 F.2d at 1045.

Since Pullman, both the Supreme Court and the First Circuit have clarified that certification of a question to the Supreme Judicial Court is a permissible means of serving the principles of Pullman abstention when a definitive decision on a question of uncertain state law may keep federal constitutional issues from being decided unnecessarily. See Mills, 457 U.S. at 306; Arizonans for Official English, 520 U.S. at 77; Rogers v. Okin, 738 F.2d 1, 5 (1st Cir. 1984). A United States District Court may certify a question for decision by the Supreme Judicial Court "if there are involved in any proceeding before it questions of law of [the Commonwealth of Massachusetts] which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [Supreme Judicial Court]." Mass. S.J.C. Rule 1:03. A federal court may certify a question even if no party has

requested certification.  See Bellotti, 428 U.S. at 143 n.10; In re Hundley, 603 F.3d 95, 98 (1st Cir. 2010); Robinson, 866 F.2d at 1043.

The reasons justifying Pullman abstention previously discussed also justify certifying the state law questions in this case for decision by the Supreme Judicial Court.  In addition, certification is now more appropriate than abstention, which would require institution of a new action in the state courts.  As explained in the January 14, 2011 Memorandum and Order, before Turner was sentenced to prison and undisputedly removed from office by operation of M.G.L. c. 279, §30, there were factors that favored abstention as a means of providing the state courts the opportunity to decide whether the scheduled special elections should be enjoined.  "Election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts."  Bonas v. Town of North Smithfield, 265 F.3d 69, 74 (1st Cir. 2001).  Prior to Turner's sentencing, respect for the role and responsibilities of the state in our federal system favored allowing a state court to decide whether the special elections should be enjoined.  However, certification of questions to the Supreme Judicial Court might not provide it the authority to issue an injunction.  Cf. Rogers, 838 F.2d at 4 (answers to a certified question "do not constitute a directly enforceable judgment" and, therefore, "plaintiff could not

-15-

obtain from a federal or state court a contempt citation for defendants' violation of the answers").

As explained in the February 7, 2011 Memorandum and Order denying the motion for preliminary injunction, the fact that Turner's prison sentence removed him from office contributed to the conclusion that it was now most appropriate for this federal court to decide whether the elections to select his successor should be enjoined. Therefore, the issue of enjoining the elections is no longer a factor.

The interests of getting prompt, definitive decisions on the questions of whether the Council exceeded its authority in promulgating Rule 40A and employing it to remove Turner, and on whether Rule 40A is civil or criminal in nature, will be best served by certification to the Supreme Judicial Court, rather than requiring a decision by a state trial court and a subsequent appeal. Certification is also the less expensive option, which plaintiffs prefer to abstention if the court decides that one or the other is necessary. See Rogers, 738 F.2d at 5 (certification is a substitute for abstention, rather than a complement to it).

Therefore, in view of the foregoing, the court is certifying the relevant questions to the Supreme Judicial Court rather than abstaining.

IV.   ORDER

Accordingly, it is hereby ORDERED that:

1.    The following questions of law are certified to the Supreme Judicial Court of Massachusetts, pursuant to S.J.C. Rule 1:03:

a. Did the Charter of the City of Boston, or any other provision of the laws of the Commonwealth of Massachusetts, authorize the Boston City Council to promulgate Rule 40A of the Rules of the Boston City Council and employ it to remove an incumbent Councillor from office before he was sentenced and removed automatically by operation of M.G.L. c. 279, §30?

b.  If so, is Rule 40A a civil or a criminal provision of law?

2.    The Clerk of the Court shall forward to the Supreme Judicial Court, under the official seal of this Court, copies of this Memorandum and Order, the entire record of this case, and the docket and documents from <u>United States v. Turner</u>, Cr. No. 08-10345-DPW, which relate to this Memorandum and Order and are listed on Exhibit A hereto.

4.    This case is STAYED pending a response to the certified questions from the Supreme Judicial Court.


        _____/s/ Mark L. Wolf_____
        UNITED STATES DISTRICT JUDGE

## **<u>EXHIBIT A</u>**

The following documents from <u>United States v. Turner</u>, Cr. No. 08-10345-DPW, shall be transmitted to the Supreme Judicial Court by the Clerk of the Court:

1.  A certified copy of the docket

2.  Complaint (Cr. Docket No. 2)

3.  Indictment (Cr. Docket No. 29)

4.  Second Superseding Indictment (Cr. Docket No. 71)

5.  Jury Verdict (Cr. Docket No. 262)

6.  Oct. 29, 2010 Order (Cr. Docket No. 264)

7.  Defs.' Mot. to Continue Sentencing (Cr. Docket No. 340)

8.  Jan. 13, 2011 Mem. and Order (Cr. Docket No. 345)

9.  January 25, 2011 Judgment (Docket No. 394)